The UNITED STATES of America

v.

**Billy Anthony GRAHAM, David Flood, Lonnie Graham and David Sweat.**

**No. CR–82–198.**

United States District Court, W.D. New York.

April 27, 1983.

Stephan J. Baczynski, Asst. U.S. Atty., Buffalo, N.Y., for plaintiff.

E. Carey Cantwell, Alan D. Goldstein, Arthur F. Dobson, Jr., Patrick J. Brown, Buffalo, N.Y., for defendants.

## MEMORANDUM

ELFVIN, District Judge.

On December 22, 1982 there occurred an armed bank robbery in which some $37,000 was stolen by a lone gunman, Billy Anthony Graham, assisted by the driver of the getaway car, David Flood. The former and another co-defendant have plead guilty to charges arising from such incident. Now before me is the motion to suppress evidence against David Sweat, he being charged with unlawful receipt and possession of approximately $1,300 of the proceeds of the robbery. Such sum was found

when Sweat was frisked upon exiting from the two-flat house in which Billy Anthony Graham had been arrested about an hour earlier, at around midnight. During Graham's arrest, which occurred in the upper flat, Sweat was apparently in the lower flat which had been thoroughly surveyed during the search for Graham. It appears that Graham himself definitely had been in the lower flat previously, subsequent to the robbery. (Hearing Transcript ("T") 27–28). It further appears that Graham's residence was in the lower flat and that in the initial search of such flat there was found and seized a sawed-off shotgun similar to the robbery weapon.

In the course of his arrest Graham had told the arresting officers words to the effect that the robbery proceeds were well-hidden and would probably never be found by the police. Accepting this challenge, a police officer directly thereafter prepared an application for a warrant to search the basement, both flats and the attic of the house and the persons of anybody present therein. Two police officers were stationed in a patrol car in front of the house while such application was being made, with directions to frisk anyone leaving the house. (T 51.)[1]

In his application for the search warrant the officer recited the causes and the circumstances of Graham's arrest. He stated his belief, based on his "experience in investigating robberies and crimes" that it was "extremely unlikely that, after committing the crime that [Graham] would give up that much money to others, and never know anything more, and that he kept the money or a good portion of it with him in his house or in the house." The officer also felt that the presence of the gun in the house indi-cated that the stolen money was also to be found therein. Permission was sought to search the upper flat because an occupant thereof had initially lied to the police about Graham's presence within, and to search any persons on the premises "[b]ecause money could be found on their person." The warrant was granted by a judge of the New York Supreme Court at 4:30 a.m. on the day following the robbery and a subsequent search uncovered $11,622 of the bank's proceeds in the house.

■ There can be no doubt that such warrant was issued upon probable cause with respect to the premises to be searched.[2] *See, e.g., Zurcher v. Stanford Daily,* 436 U.S. 547, 554, 98 S.Ct. 1970, 1975, 56 L.Ed.2d 525 (1978) ("The critical element in a reasonable search is * * * that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). A closer question is whether such a rational basis existed with respect to the warrant's direction to search "any person present" in the house, in view of the Fourth Amendment's requirement that a search warrant "particularly describ[e]" its objects.[3] In *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Court found that there did not exist probable cause to search a patron of a tavern as to which a warrant had been obtained to search for evidence of heroin possession. A pat-down search of all the patrons present at the warrant's execution was conducted pursuant to an Illinois statute authorizing the search of any person in the place of a warrant's execution "[t]o prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant." The warrant "did not allege

---

1. One of the officers testified at the suppression hearing that they were told merely to "surveil" the house, from which he implied, in the circumstances, directions to stop and pat down persons leaving the house. (T 93.)

2. I exclude from this determination the event of Sweat's arrest based upon the money found on his person, which was recited as further grounds, at the end of the warrant application.

3. There is nothing in the record indicating that the search of Sweat was prompted by any concern for the possibility of a weapon concealed on his person. Hence the doctrine of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, including *United States v. Barlin,* 686 F.2d 81 (2d Cir. 1982), cited by the government, are inapposite here. *Cf. Ybarra v. Illinois,* 444 U.S. 85, 92–93, 100 S.Ct. 338, 342–343, 62 L.Ed.2d 238 (1979).

that the bar was frequented by persons illegally purchasing drugs," or "even mention the patrons of the tavern." *Id.,* at 90, 100 S.Ct. at 341. The Court observed that

> "[W]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Id.,* at 91, 100 S.Ct. at 342.

Consequently, the search of the patron was held illegal.

Footnote 4 of the *Ybarra* decision observes that the warrant involved in that case "provided no basis for departing from [the] general rule" that "a warrant to search a place cannot normally be construed to authorize a search of each individual in that place"; thus the Court found that it "need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Id.* at 92, 100 S.Ct. at 342. In *Michigan v. Summers,* 452 U.S. 692, 695 n. 4, 101 S.Ct. 2587, 2590 n. 4, 69 L.Ed.2d 340 (1981), it was observed that in *Ybarra* "the police had no reason to believe [Ybarra] had any special connection with the premises" —a public tavern. Such concern does not exist in this case.

■ I am persuaded that in all of the circumstances of this case the warrant eventually obtained was constitutionally satisfactory as to the direction to search any persons on the premises to be searched. Graham's intention to secrete the stolen money from the police had been made manifest. Both apartments containing persons other than Graham at the time of his arrest had become associated with Graham's presence subsequent to the robbery. The persons in the lower apartment, Graham's own, were presumably friends or relatives of Graham, and an occupant of the upper apartment had displayed friendliness toward Graham by initially lying about his presence therein. There was no question that Graham had committed the robbery, and the presence of the robbery weapon in the lower apartment strongly suggested that the money to be searched for was also within the house, as noted by the applying officer. Stolen money is an item of contraband easily concealable on the person. To hold that in circumstances such as these a search warrant must particularly specify each person to be searched and state independent probable cause as to each so specified would excessively impede law enforcement efforts and invite criminal defiance of the law.

■ The significance of my finding that there existed probable cause for the search warrant as to any persons, including Sweat, on the premises at the time of Graham's arrest is that such provides a needed prerequisite for the warrantless seizure and search of Sweat, in the absence of a specifically defined exception to the probable cause requirement (*see, e.g., Michigan v. Summers, supra,* at 696–699, 101 S.Ct. at 2590–2592). There having been probable cause for searching Sweat, the other question to be answered is whether there existed such "exigent circumstances" as to justify the search of Sweat without awaiting the warrant. The circumstances in which such justification exists are not to be lightly inferred and have been described as constituting "a few specifically established and well-delineated exceptions" to the warrant requirement (*Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). There is admittedly no Supreme Court ruling to be found specifically sanctioning warrantless searches such as occurred here (*see, United States v. Martino,* 664 F.2d 860, 869 (2d Cir.1981)), although the so-called "automobile exception" is premised solely upon the need to preserve evidence.

> "As we said in *Chambers* [*v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) ], at 51 [90 S.Ct. at 1981], 'exigent circumstances' justify the warrantless

search of 'an automobile *stopped on the highway,*' where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' '[T]he opportunity to search is fleeting . . . .' (Emphasis supplied)." *Coolidge v. New Hampshire,* 403 U.S. 443, 460, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564 (1971).

In the instant case, it is at best questionable whether the posted police officers could have lawfully detained Sweat and the other occupants of the house pending issuance of the warrant. *See, Rawlings v. Kentucky,* 448 U.S. 98, 110, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). *But, cf., Michigan v. Summers, supra.* Had Sweat been detained, he and the others in the house quite probably would have become fully alerted to the approaching search of the premises for bank robbery proceeds and resolved to destroy or better conceal such evidence. If not stopped and searched Sweat would have made away with stolen money which undoubtedly would never have been seen again. Under these circumstances the warrantless search of Sweat, based on probable cause, was justified by exigent circumstances. *Cf., United States v. Vasquez,* 638 F.2d 507, 531–532 (2d Cir.1980), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981) (with opinion of Stevens, J. and dissenting opinion of Brennan, J.); *United States v. Fulton,* 549 F.2d 1325 (9th Cir. 1977); *United States v. McLaughlin,* 525 F.2d 517 (9th Cir.1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976); *Thomas v. Parett,* 524 F.2d 779 (8th Cir.1975); *United States v. Rubin,* 474 F.2d 262 (3d Cir.), *cert. denied sub nom. Agran v. United States,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *United States v. Minick,* 455 A.2d 874 (D.C.App.1983). I am further persuaded to this result by the very limited intrusion upon Sweat's person undertaken to determine the presence *vel non* of packets of the stolen money concealed thereon. *See, Cupp v. Murphy,* 412 U.S. 291, 296, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973).

In that I have held that the search of Sweat and the consequent seizure of the incriminating evidence was lawful, his assertion that his subsequent incriminating statements should be suppressed as "fruits of a poisonous tree" has no basis. The question put to Sweat immediately upon the discovery of the money on his person as to where he had obtained the same was asked prior to it becoming established that Sweat had engaged in any wrongdoing, for lawful reasons for his possession of the money found on him were not at such point precluded. The statement made the next day to an agent of the Federal Bureau of Investigation was preceded by full notification of Sweat's *Miranda* rights and a voluntary waiver thereof.