Destiny OWENS, a minor under the age of fourteen years, by and through her mother and Guardian ad Litem, Latanya OWENS; Leshia Donaldson; William Clayton; Gregory Owens, a minor under the age of fourteen years, by and through his mother and Guardian ad Litem, Latanya Owens; Latanya Owens, Plaintiffs–Appellants,

v.

Leon LOTT, Richland County Sheriff; J. Maldonado; Jane Doe; Richard Doe, Richland County Deputy Sheriffs, Defendants–Appellees.

Destiny Owens, a minor under the age of fourteen years, by and through her mother and Guardian ad Litem, Latanya Owens; Leshia Donaldson; William Clayton; Gregory Owens, a minor under the age of fourteen years, by and through his mother and Guardian ad Litem, Latanya Owens; Latanya Owens, Plaintiffs–Appellees,

v.

Leon Lott, Richland County Sheriff; J. Maldonado; Jane Doe; Richard Doe, Richland County Deputy Sheriffs, Defendants–Appellants.

No. 03–1194 No. 03–1196

United States Court of Appeals, Fourth Circuit.

Argued: Dec. 3, 2003.

Decided: June 15, 2004.

**ARGUED:** Francis Thomas Draine, Columbia, South Carolina, for Appellants/Cross–Appellees Destiny Owens, et al. Andrew Frederick Lindemann, Davidson, Morrison & Lindemann, P.A., Columbia, South Carolina, for Appellees/Cross–Appellants Leon Lott, et al. **ON BRIEF:** William H. Davidson, II, Robert D. Garfield, Davidson, Morrison & Lindemann, P.A., Columbia, South Carolina, for Appellees/Cross–Appellants Leon Lott, et al.

Before MICHAEL, TRAXLER, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge TRAXLER wrote the opinion, in which Judge MICHAEL and Judge SHEDD joined.

## OPINION

TRAXLER, Circuit Judge:

Tiffeny Owens, Latanya Owens, Leshia Donaldson, and William Clayton (collectively "plaintiffs") brought this civil rights action under section 1983 against Deputy Sheriff Gerardo Maldonado, the Sheriff of Richland County, and two unnamed Richland County deputies, identified as "Jane Doe" and "Richard Roe" (collectively "defendants"). Plaintiffs assert defendants violated the Fourth Amendment when defendants conducted a strip-search of the women and a patdown of Clayton pursuant to a search warrant for drugs located at a private residence and "all persons at the premise [s]." J.A. 247. The district court agreed with plaintiffs that defendants' search was unreasonable under the Fourth Amendment; however, the court granted qualified immunity to defendants and

awarded them summary judgment on that basis.

Plaintiffs appeal the district court's grant of qualified immunity, and defendants cross-appeal the district court's determination that their conduct, as alleged by plaintiffs, violated the Fourth Amendment. We reject both challenges and affirm the district court.

## I.

On June 8, 2000, Deputy Gerardo Maldonado, a narcotics officer employed by the Richland County Sheriff's Department in Columbia, South Carolina, received a call from a confidential informant who claimed to have observed the sale of a large amount of cocaine at a private residence where he had stayed that night as a guest. According to the informant, from whom Deputy Maldonado had received accurate information on previous occasions, "a black male in his late teens or early twenties" had been selling the illegal drugs "in an expeditious manner" during the informant's visit. J.A. 139–40. Deputy Maldonado's informant suggested that law enforcement move swiftly in order to apprehend the drug dealer. Shortly after the phone call, the informant led Deputy Maldonado and Deputy Fred Brantley to a small house in which he claimed to have seen the drug transactions.

With the help of another officer, Deputy Jackie Kight, Deputy Maldonado drafted a proposed search warrant and executed a supporting affidavit, which he presented to a state magistrate judge around 4:00 p.m. on June 8. The affidavit stated the following:

> Within the past 72 hours a confidential and reliable informant has observed cocaine distributed from the location to be searched. The informant is reliable in that [he] has provided information of on at least four occasions that has [led] to

at least four arrest[s] and the seizure of illegal drugs. Through the affiant's and other ... Narcotic officers['] experience in drug enforcement, it is known that subjects present at the scene of illegal drug [transactions] ... commonly have drugs in their possession.

J.A. 247. Based on the foregoing statement, Deputy Maldonado sought a search warrant for "[c]ocaine, paraphernalia and paperwork associated with the sale, storage and use of cocaine" found on the premises identified by the informant, "to include *all persons* at the premise[s]." *Id.* (emphasis added). The magistrate judge signed the warrant, authorizing the officers to search "all persons at the premise[s]," *id.*, and deputies Maldonado and Kight, and several additional officers, immediately served and executed the warrant. Less than 24 hours elapsed between the time at which the confidential informant claimed to have witnessed the criminal activity and the execution of the warrant.

When defendants arrived, sisters Tiffeny and Latanya Owens were inside of the house with Latanya's two minor children. Officers initially handcuffed Tiffeny and Latanya and then Deputy Kight, a female officer, took them to a bathroom and performed a thorough search for drugs and weapons. Although Tiffeny and Latanya suggested in their deposition testimony that they had been required to remove undergarments to facilitate the search—which conflicts with Deputy Kight's assertion that she never removes clothing during a search—there is no claim before us that the *manner* in which the search was conducted was itself unconstitutional.

Soon after Deputy Kight had conducted the search of Tiffeny and Latanya, their mother, Leshia Donaldson, arrived with her fiance William Clayton. Donaldson,

who owned the property, was escorted by Kight to the bathroom and searched for drugs and weapons in the same manner as were her daughters. Like her daughters, Donaldson offered a version of what happened during the search that was not completely consistent with that of Deputy Kight, but she also does not contend that the manner of the search itself was unconstitutional. Officers frisked Clayton over his outer garments for drugs and weapons. No narcotics were found in the search of the house or its occupants.

All four adult subjects of the search, as well as the two minors, filed this action in state court against the Sheriff of Richland County, Deputy Maldonado and two officers who participated in the execution of the search warrant, identified as Jane Doe and Richard Roe, alleging that the search of the individuals violated the Fourth Amendment. It is undisputed that the defendant identified as "Jane Doe" is Deputy Kight. The remainder of plaintiffs' claims—eight of them—were based on state tort law. Defendants removed the action to district court, asserted a qualified immunity defense, and sought summary judgment on that basis.

The district court followed the two-step qualified immunity analytical sequence prescribed by the Supreme Court. *See Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court first held that the search of plaintiffs violated the Fourth Amendment's guarantee against "unreasonable searches and seizures." U.S. Const. amend. IV. The district court defined the issue as "whether police officers may validly obtain and execute a search warrant for 'all persons' present at a locale, absent showing of particularized probable cause to search each individual." J.A. 329. Rejecting the view that "all persons" warrants similar to that procured by Deputy Maldonado are *per se*

unconstitutional, the district court adopted the widely-held position, as suggested in *State v. De Simone*, 60 N.J. 319, 288 A.2d 849 (1972), that such warrants can pass constitutional muster if there was probable cause to believe "all persons" found at the location being searched "would be involved in the criminal operation" occurring there. *Id.* at 854; *see id.* at 850 (affirming the constitutionality of the search of a passenger in an automobile used to conduct an illegal gambling operation pursuant to a search warrant for the vehicle " 'and all persons found therein.' "). The district court determined there was no such probable cause in this case, finding that "the only rationale ... to support a claim of particularized probable cause" to search all individuals found on the property was "the individual's proximity to the alleged [criminal] activity." J.A. 339. Citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the court noted that, without more, "the connection between proximity to crime and involvement in crime [is] too tenuous to support ... [an] 'all persons' warrant." J.A. 339–40.

Turning to the question of qualified immunity, however, the district court held that, at the time of the unconstitutional search, the right violated by defendants was not clearly established. The district court concluded that, "[b]ased on the lack of Supreme Court and Fourth Circuit precedent dealing directly with 'all persons' warrants," and the lack of consensus among decisions at the time that did touch on the issue, the law was insufficiently clear to divest defendants of their qualified immunity. J.A. 342. Accordingly, the court granted defendants qualified immunity, dismissed the section 1983 claim, and remanded the remaining claims, all of which are grounded in state law, to state court.

Defendants appeal the district court's conclusion that plaintiffs' section 1983 action states a constitutional violation; defendants agree with the district court, of course, that the law was not clearly established for purposes of qualified immunity. Conversely, plaintiffs agree with the district court's determination that the search was constitutionally invalid, but challenge the court's conclusion that the law was not "clearly established" at the time. We cannot completely accept either position because, in our opinion, the district court reached the correct result on both steps. Thus, we affirm the judgment of the district court.

## II.

■ A court's evaluation of a qualified immunity defense to a section 1983 claim is a two-part process. Our first task is to determine whether the plaintiff has alleged the deprivation of a constitutional right. *See Saucier*, 533 U.S. at 200–01, 121 S.Ct. 2151. If so, only then do we undertake the next task of determining "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir.2002). Thus, liability will not be imposed "when an officer violates [a constitutional right]" unless "a reasonable officer would know that the specific conduct at issue was impermissible." *Rogers v. Pendleton*, 249 F.3d 279, 285 (4th Cir.2001); *see Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ We turn first to the question of whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show [that] the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Specifically, we must decide whether the facts, viewed in a light most favorable to plaintiffs, establish that defendants' search of plaintiffs pursuant to the "all persons" language in the warrant was unreasonable under the Fourth Amendment.*

■ The Fourth Amendment ensures that citizens are "secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. "[R]easonableness requires probable cause and a warrant unless one of the exceptions to the warrant requirement applies," *Doe v. Broderick*, 225 F.3d 440, 451 (4th Cir.2000); *see Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), a principle drawn from the Fourth Amendment's prohibition against the issuance of warrants without "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The magistrate issuing the search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on

---

* This opinion employs the term "all persons warrant" to mean (generally) a search warrant authorizing the search of a particular place for evidence of a particular crime, as well as "all persons" found on the premises at the time of the search. *See* 2 Wayne R. La-Fave, *Search and Seizure* § 4.5(e), at 545 (3d ed. 1996) ("One form of warrant which has been challenged with some frequency directs a search for particularly described items within a ... home, apartment, store, or vehicle, including 'any and all persons found therein.' ").

the totality of the circumstances." *Maryland v. Pringle*, —— U.S. ——, ——, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003). For that reason, in reviewing the sufficiency of a supporting affidavit, we avoid applying" 'hypertechnical' scrutiny ... lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Robinson*, 275 F.3d 371, 380 (4th Cir.2001) (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. 2317).

▆▆▆ In addition to the requirement that a search warrant be supported by probable cause, the warrant must particularly describe the place where the search will occur and the "persons or things to be seized." Thus, the particularity requirement of the Fourth Amendment is directed at the warrant as opposed to the supporting affidavit. *See Groh v. Ramirez*, —— U.S. ——, ——, 124 S.Ct. 1284, 1289, 157 L.Ed.2d 1068 (2004). Requiring particularity in the warrant itself serves a couple of important functions. Of course, there is the well-examined purpose of preventing general searches. *See Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) ("By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search ... will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."). A search warrant that describes its object with particularity discourages the state from embarking on a " 'general exploratory rummaging' " through a citizen's private residence. *United States v. Oloyede*, 982 F.2d 133, 138 (4th Cir.1992) (per curiam) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). The particularity requirement also affords written assurance to "the individual whose property is searched or seized of the lawful authority of the exe-

cuting officer, his need to search, and the limits of his power to search." *Groh*, —— U.S. at ——, 124 S.Ct. at 1292 (internal quotation marks omitted).

Whether, and under what circumstances, an "all persons" warrant is valid under the Fourth Amendment presents a novel question in this circuit. It also remains unanswered in the Supreme Court, which acknowledged this issue in *Ybarra*, 444 U.S. at 92 n. 4, 100 S.Ct. 338, but left its resolution for another day. Only a smattering of federal courts have addressed the difficulties presented by the inclusion of "all persons" language in a premises search warrant, *see Marks v. Clarke*, 102 F.3d 1012, 1029 (9th Cir.1996); *Baker v. Monroe Township*, 50 F.3d 1186, 1188–89 n. 1 (3d Cir.1995); *id.* at 1199 (Alito, J., dissenting); *United States v. Guadarrama*, 128 F.Supp.2d 1202, 1206–14 (E.D.Wis.2001) (collecting cases); *United States v. Graham*, 563 F.Supp. 149, 151 (W.D.N.Y.1983), and a few others have mentioned it in passing, *see Burns v. Loranger*, 907 F.2d 233, 234 n. 2 (1st Cir. 1990); *Guzman v. Estelle*, 493 F.2d 532, 533–34 & n. 7 (5th Cir.1974); *United States v. Johnson*, 475 F.2d 977, 979 n. 5 (D.C.Cir.1973). The most extensive treatment of the question, by far, has been given in the state courts. *See Guadarrama*, 128 F.Supp.2d at 1206–09 (compiling a comprehensive list of state court decisions from more than thirty-five jurisdictions).

The minority view emerging from these decisions is that a premises search warrant that also authorizes the search of "all persons" found on the premises being searched contravenes the particularity requirement of the Fourth Amendment and is invalid on its face. Common to the minority position is the view that there is an "uncomfortable similarity between [the] 'all persons' warrant and [the] general warrant." *Id.* at 1207. In sum, a handful

of decisions suggest that an "all persons" warrant is invalid *per se* under the Fourth Amendment, concluding it is either functionally the same as a general warrant, or it is not sufficiently particular to satisfy the requirements of the Fourth Amendment's Warrant Clause. *See, e.g., State v. Cochran*, 135 Ga.App. 47, 217 S.E.2d 181, 183–84 (1975)

By contrast, a majority of the courts have rejected the idea that an "all persons" warrant could never under any circumstances be constitutional. The New Jersey Supreme Court's opinion in *De Simone* emerged as the leading decision for the view that an "all persons" warrant is not unconstitutional *per se*, but rather is valid as long as there is probable cause to believe that *everyone* found on the premises being searched is involved in the illegal activity and that evidence of the crime would be found on their person. *See* 288 A.2d at 854. Under such a fact-dependent approach, the constitutionality of a search based upon a person's physical proximity to the illegal activity turns wholly on the context of the search. Thus,

> [a] showing that [illegal] lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

*Id.* at 850. *De Simone* involved an illegal gambling business that several individuals operated from their automobiles, using the vehicles as a "drop" or "pickup" for the exchange of money and gambling slips. Officers who had observed the operation obtained search warrants for the search of the vehicles and " 'all persons found therein.' " *Id.* The court observed that it was "reasonable to conclude . . . that a passenger in the car was probably a party [to the wrongdoing] . . . [because] a driver would not likely bring . . . an uninvolved person who would witness" drops and pickups to and from an empty car. *Id.* at 852. The close quarters in the interior of a car makes a passenger's presence more indicative of complicity in the illegal activities "than would be presence in a building in which some illegality may be occurring." *Id.* at 851.

Although *Ybarra v. Illinois* did not address a so-called "all persons" warrant, it sheds additional light on our analysis. Officers in *Ybarra* obtained a warrant to search the premises at a public tavern, as well as the bartender, for narcotics. A state statute allowed officers who were executing the warrant "to search any person in the place . . . (a) [t]o protect himself . . . or (b) *to prevent the disposal or concealment of* . . . things particularly described in the warrant." 444 U.S. at 87 n. 1, 100 S.Ct. 338 (emphasis added). There was no specific information giving officers probable cause to believe that anyone in the tavern, other than the bartender, was involved in the distribution of drugs. Indeed, the application for the warrant did not suggest that the tavern was regularly visited by drug-purchasing patrons—the sole connection between Ybarra and the drug transactions at the tavern was his presence "in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale." *Id.* at 91, 100 S.Ct. 338. And, there was no

reason that Ybarra would have appeared armed or dangerous. Nevertheless, officers patted down Ybarra and recovered heroin from his pocket.

In holding the search unconstitutional under the Fourth Amendment, the Court explained that there was no "probable cause particularized with respect to [Ybarra]" and that his "mere propinquity to others independently suspected of criminal activity d[id] not, without more," supply the missing probable cause. *Id.* The Court noted that, because of the particularity requirement of the Warrant Clause, a general warrant is impermissible, and "[i]t follows that a warrant to search a place cannot normally be construed to authorize a search of each individual in that place." *Id.* at 92 n. 4, 100 S.Ct. 338. Finally, the Court implied that the warrant issued for the tavern did not supply a basis for searching individuals in the bar, although the Court recognized the possibility that a warrant could, under the right circumstances, provide that support: "[W]e need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Id.*

 We agree that the majority view, as articulated in *De Simone,* correctly holds that an "all persons" warrant can pass constitutional muster if the affidavit and information provided to the magistrate supply enough detailed information to establish probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity. In our view, the inclusion of "all persons" language in a warrant presents probable cause issues rather than particularity problems. "A search warrant authorization to search all persons found within a

specifically described place is not lacking particularity in the sense that the executing officer will be unable readily to determine to whom the warrant applies." 2 Wayne R. LaFave, *Search and Seizure* § 4.5(e), at 546–57 (3d ed.1996); *see De Simone,* 288 A.2d at 850–51 ("[W]ith regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is … identified by physical nexus to the ongoing criminal event itself."). Thus, as long as "there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant" in the criminal activity occurring there, "presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *De Simone,* 288 A.2d at 851.

 In this case, we agree with the district court that Deputy Maldonado's affidavit did not supply sufficient information to establish probable cause that anyone who happened to be on the premises during the execution of the search warrant was involved in the sale of illegal drugs. The only justification presented to the magistrate for the search of "all persons at the premise[s]" was Deputy Maldonado's "experience in drug enforcement … that subjects present at the scene of [an] illegal drug distribution … commonly have drugs in their possession." J.A. 247. This generalization was and is undoubtedly true, but it did not provide the kind of particularized information that would have permitted the magistrate to reasonably conclude that there was a fair probability that any person seen by officers on the premises was there to partake in one side of a drug transaction or another. At bottom, the search warrant authorized the search of individuals in this case based on nothing more than their proximity to a place where criminal activity *may or may*

*not* have occurred. And, as the Supreme Court has explained, "a person's mere propinquity" to suspected criminal activity "does not, without more, give rise to probable cause to search that person." *Ybarra,* 444 U.S. at 91, 100 S.Ct. 338.

Defendants contend that the district court's conclusion was wrong in two respects: (1) the court erroneously believed that the "particularized probable cause" necessary to search an individual under an "all persons" warrant required Deputy Maldonado and his fellow officers to identify *specific individuals* to be searched; and (2) contrary to the district court's determination, there were sufficient facts to support probable cause to search anyone found on the premises for drugs—in other words, there was presented to the magistrate more than plaintiffs' mere propinquity to the alleged criminal activity. We cannot agree.

Defendants' contention that the district court found the search unconstitutional because law enforcement failed to identify any specific individual to be searched misconstrues the district court's decision. Defendants focus, to the exclusion of several pages of discussion, on the district court's statement that "the warrant failed to describe any particular individual." J.A. 339. Even a casual reading of the district court's opinion, however, makes clear that the district court properly understood that the relevant inquiry was whether there was "probable cause to believe 'all persons' present at [the subject residence] would be involved in criminal activity," and that the search warrant failed because it did not "articulate particularized probable cause to search *any* specific individual." *Id.* Read in the context of the district court's entire opinion, the latter statement—and others like it—merely reflect the court's conclusion that there was no probable cause to search *any individual who happened to be* on the premises when the warrant was executed. The district court correctly concluded that there was simply no probable cause for the searches at issue—there was no probable cause to search "all persons at the premises," which includes the plaintiffs, and obviously there was no description or other specific information contained in the affidavit or warrant that would have permitted the search of plaintiffs separate and apart from the "all persons" language contained in the warrant.

Next, defendants argue that there were sufficient facts to establish probable cause to search "all persons" on the premises. Defendants offer several factors in support of this argument: the warrant was executed on the same day that the informant claimed to have witnessed the drug transactions; a large amount of cocaine was alleged to have been at the house; the informant reported that drugs were being sold rapidly; the premises to be searched was a small, single-family house; and each of the individuals searched had a "significant connection" to the premises, living there part-time or full-time. According to defendants, these allegations permit the reasonable assumption that the drug transactions were not yet complete and that any person who was at the house was involved. Further, defendants contend the fact that the house was small bolsters the conclusion that any person on the premises at the time of the search knew about the activity and was involved.

 None of these facts appear in Deputy Maldonado's supporting affidavit. Our review of whether the search warrant was supported by probable cause—in other words, a review of the facts upon which the issuing magistrate relied—may not go beyond the information actually presented to the magistrate during the warrant application process. *See Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031,

28 L.Ed.2d 306 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate.... A contrary rule would ... render the warrant requirements of the Fourth Amendment meaningless."). In this circuit, the failure to include information within the four corners of the affidavit is not necessarily fatal, provided the information is actually presented to the magistrate—a magistrate "may consider sworn, unrecorded oral testimony in making probable cause determinations during warrant proceedings." *United States v. Clyburn,* 24 F.3d 613, 617 (4th Cir.1994). All the record contains in this regard, however, is an affidavit filed in the district court by Deputy Maldonado recounting the information supplied by the informant, including the fact that the informant had witnessed the transactions in the early morning hours of that same day and that there was a large amount of narcotics involved. The size of the residence, which defendants contend is a critical factor in favor of probable cause, is not mentioned in Deputy Maldonado's federal affidavit, was apparently never given to the magistrate and was never a factor in the issuance of the search warrant. According to Deputy Maldonado, he drafted the supporting affidavit which he took to the magistrate; "[a]fter hearing the aforementioned background information, Judge Davis determined that probable cause existed ... [and] signed the search warrant and supporting affidavit." J.A. 141. There is simply no indication in the record that any of the specific facts upon which defendants now rely were offered to the magistrate through sworn oral statements. Accordingly, defendants' argument relies upon facts extrinsic to the application process which will not aid them in the context of probable cause.

Furthermore, these facts, even if presented to the magistrate through sworn oral testimony, fail to provide the kind of information that would establish probable cause to believe *every person* found on the premises was likely involved in the selling and buying of drugs. There was no indication, for example, that this particular residence had a history of drug-related activities or that known drug dealers or users were frequenting the place. *See Commonwealth v. Graciani,* 381 Pa.Super. 626, 554 A.2d 560, 562 (Pa.Super.Ct.1989) (search under "all persons" warrant valid relating to drug transactions occurring in residence where previous drug-related arrests had been made); *Morton v. Commonwealth,* 16 Va.App. 946, 434 S.E.2d 890, 892–93 (1993) (upholding "all persons" warrant where officer's affidavit indicated that apartment manager had received prior complaints about crack distribution from the subject apartment and that recent surveillance had discovered the presence of known drug dealers in the apartment); *Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101, 106 (1976) ("all persons" warrant valid in light of recent comings and goings of known heroin traffickers). There was no ongoing drug activity evidenced by multiple transactions over an extended period of time; rather, the confidential informant reported having seen cocaine distributed from the residence on a single occasion. *See People v. Johnson,* 805 P.2d 1156, 1161 (Colo.Ct.App.1990) (permissible to search every person found on the premises in light of "transactions [that] are continuous, ongoing, and obvious to even the most unsophisticated observer that criminal activity is taking place") (internal quotation marks omitted). Nor was there any "regular traffic" of individuals to and from the residence that would suggest ongoing drug activity. *See State v. Loins,* 26 Kan. App.2d 624, 993 P.2d 1231, 1235 (1999)

(collecting cases); *Smith,* 348 N.E.2d at 106. Furthermore, there was nothing about the condition of the house itself, its location or its surrounding neighborhood to suggest it served as a place likely to attract only people involved in the drug trade. *See People v. Nieves,* 36 N.Y.2d 396, 369 N.Y.S.2d 50, 330 N.E.2d 26, 34 (1975) (validity of "all persons" warrant determined in light of affidavit's description of "the character of the premises . . . its location, size, the particular area to be searched, means of access, neighborhood"). Finally, although the search warrant pertained to non-public property—where ordinarily the presence of an innocent passerby is less likely than in a public facility like a train station—the *residential* nature of the premises and the fact that the search occurred during daytime or early evening hours presented the obvious risk that unsuspecting friends, neighbors, or laborers would be present during the search. *See State v. Jackson,* 616 N.W.2d 412, 419 (S.D.2000) ("Another factor leading us to uphold this warrant is that it was executed at night, making it improbable that innocent people would show up by happenstance.").

In sum, Deputy Maldonado was not given sufficient information by his confidential informant and, in turn, did not supply the magistrate information to establish probable cause that "all persons" at the residence were likely involved in illegal drug transactions.

### III.

▮ The second phase of the qualified immunity analysis requires us to decide whether the conduct alleged by the plaintiff "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A preliminary task is to define the constitutional right at issue "at a high level of particularity." *Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir.1999). The right alleged to have been violated is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. This determination "is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Wilson v. Kittoe,* 337 F.3d 392, 402 (4th Cir.2003). "Clearly established" does not mean that "the very action in question has previously been held unlawful," but it does require that, "in the light of pre-existing law the unlawfulness [of the official's conduct] must be apparent." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). In other words, "the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established." *Amaechi v. West,* 237 F.3d 356, 362 (4th Cir.2001). And, the absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity. *See Kittoe,* 337 F.3d at 403. We must consider "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Amaechi,* 237 F.3d at 362–63 (internal quotation marks omitted).

▮ Whether a right has been specifically adjudicated or is manifestly apparent from broader applications of the constitutional premise in question, we look ordinarily to "the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." *Edwards,* 178 F.3d at 251 (inter-

nal alterations and quotation marks omitted). When there are no such decisions from courts of controlling authority, we may look to "a consensus of cases of persuasive authority" from other jurisdictions, if such exists. *Wilson*, 526 U.S. at 617, 119 S.Ct. 1692; *see Amaechi*, 237 F.3d at 363.

 There is no controlling authority that informs our analysis in this case. As we have already noted, the Supreme Court has not addressed the circumstances, if any, under which an "all persons" provision in a search warrant is constitutional, *see Ybarra*, 444 U.S. at 92 n. 4, 100 S.Ct. 338, nor has this court done so. The vast majority of the decisions from other jurisdictions considering the validity of "all persons" warrants—mostly state decisions—conclude that a search warrant authorizing the search of "all persons" found on the premises does not violate the Fourth Amendment *per se.* Beyond that broad conclusion, however, courts impose different requirements for what is necessary to sustain the validity of such a warrant. The approach used in *De Simone*, for example, is to determine whether "there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant" in the criminal conduct occurring there. 288 A.2d at 851. Other jurisdictions, imposing more stringent requirements, "permit such warrants if the facts known to the issuing judge justify a belief that the premises are *confined to* ongoing illegal activity and that every person within the orbit of the search possesses the items sought by the warrant." *State v. Horn*, 15 Kan.App.2d 365, 808 P.2d 438, 439 (1991) (emphasis added); *see Nieves*, 369 N.Y.S.2d 50, 330 N.E.2d at 34. Still another approach is to find the warrant valid if there is a reasonable probability that persons involved in the criminal activity will be present during

the execution of the warrant. *See State v. Hayes*, 196 Wis.2d 753, 540 N.W.2d 1, 4 (1995). Moreover, these decisions provide no clear view, let alone a consensus, regarding what factors are most significant in deciding whether sufficient probable cause exists to support the search of "all persons" found in a private residence being searched for drugs. *Compare Hayes*, 540 N.W.2d at 3 (approving of search of "all persons" on the premises where supporting affidavit stated only that, in the officer's experience, it was common to find persons involved in the crime on the premises during the search and that such individuals commonly carried contraband on their persons) *with State v. Thomas*, 540 N.W.2d 658, 664 (Iowa 1995) (requiring the warrant application to include (1) "the character of the premises, including its location, size, and public or private character;" (2) "the nature of the illegal conduct;" (3) "the number and behavior of persons expected to be present . . .;" (4) whether innocent individuals were seen on the premises; and (5) the time and place the alleged activity is to occur). We conclude that at the time of the search, the law was not sufficiently clear to strip defendants of qualified immunity.

## IV.

For the foregoing reasons, we affirm the district court's determination that the search of plaintiffs violated their Fourth Amendment rights, but that these rights were not clearly established such that a reasonable officer would have understood that the search encroached upon those rights.

*AFFIRMED*