United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 15, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-30020

BERNICE LOUISE SPENCER,
INDIVIDUALLY AND ON BEHALF OF SHADOW AND RAEVYN SPENCER,

Plaintiffs-Appellants,

versus

JACK STATON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
DEWAYNE BRUMLEY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
GUFFEY LYNN PATTISON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

EDITH H. JONES, Chief Judge:

In this civil-rights action brought under 42 U.S.C. § 1983, Plaintiff-Appellant Bernice Spencer appeals the district court's grant of summary judgment to Defendants-Appellees Detective Jack Staton, Detective Dewayne Brumley, and Sheriff Guffey Lynn Pattison. Because material fact issues exist regarding (1) whether the arrest warrant Staton and Brumley obtained was supported by probable cause, and (2) Staton's and Brumley's entitlement to qualified immunity, we reverse the district court's dismissal of Spencer's federal claims; affirm dismissal of the state-law tort

claims against the Detectives; affirm as to Sheriff Pattison; and remand for further consideration.

**BACKGROUND**

Bernice Spencer arrived in Louisiana from California on August 22, 2003. Her husband, John Spencer, had left California several weeks earlier to care for an ailing aunt in Pleasant Hill, Louisiana. During their stay, they lived in a mobile home along with John Spencer's brother-in-law, Vasco Zinnerman. John Spencer's aunt, his cousin Jimmy Turner, and several members of his extended family lived nearby.

On August 24, Andrew and Nancy Johnson, the owners of a Pleasant Hill feed store, were shot to death in a botched robbery attempt. Suspicion quickly coalesced around John Spencer, Turner, and Zinnerman, whom witnesses had seen near the store shortly before the murders. In the course of investigating the incident, Detectives Jack Staton and Dewayne Brumley traveled to the Spencer mobile home in the early-morning hours of August 25. Staton and Brumley questioned the Spencers and Zinnerman at a local police station.

During her interrogation, Bernice Spencer denied any involvement in the murders. She claimed to be unaware who owned a .22 caliber rifle recovered from the mobile home or that it was widely known in the community that "people [were] walking around [the mobile-home park] with guns" on the day of the shooting.

2

Further, she told Staton and Brumley that her husband had been with her "the majority of the day," except for a brief visit he made to his aunt's nearby mobile home. To the question when she planned to return to California, she replied: "Um, probably next couple of days." All three suspects were released after a few hours.

As their investigation progressed, however, Staton and Brumley discovered that both John Spencer and Zinnerman owned handguns they frequently used for target shooting behind the mobile home; that John Spencer had attempted to buy ammunition on the day of the shootings; and that a witness had overheard Zinnerman ask John Spencer: "Are you sure that the [expletive denoting murder victims] are dead?"

Because of this newly acquired information, Staton and Brumley returned to the mobile home on August 26, only to learn that the Spencers and Zinnerman had left for California earlier that morning. Fearing that the three were attempting to flee, the Detectives obtained arrest warrants for the Spencers and Zinnerman, charging the men with armed robbery and first-degree murder, and Bernice Spencer as an accessory after the fact.

On August 28, the Spencers were apprehended in California. John Spencer later confessed that he had been waiting outside the feed store in a car when his cousin Jimmy Turner shot the Johnsons to death. Bernice Spencer was held in the Solano County, California, jail until Louisiana authorities secured her extradition. The accessory charge against Bernice Spencer was

3

eventually dismissed as part of a plea agreement between a Louisiana district attorney and John Spencer.

Bernice Spencer sued Detectives Staton and Brumley and Sabine Parish Sheriff Guffey Lynn Pattison under 42 U.S.C. § 1983, alleging false arrest, false imprisonment, and conspiracy, and several state-law tort claims. The Defendants moved for summary judgment based on qualified immunity. Finding that a reasonable police officer could have concluded that there was probable cause to arrest Bernice Spencer, the district court granted summary judgment and dismissed the federal and state charges. Spencer appealed.

## DISCUSSION

### A. Standard of Review

We review <u>de novo</u> the district court's summary judgment grant, applying the same standard used below. <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 291 (5th Cir. 2005) (citing <u>Keenan v. Tejeda</u>, 290 F.3d 252, 258 (5th Cir. 2002)). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B. **Malley** Violation[1]

---

[1] We note that since Bernice Spencer was arrested by a California police officer unconnected to the Louisiana double-murder investigation – not by Detectives Staton and Brumley – this case is distinguishable from one in which a warrant application itself does not provide a sufficient basis for

4

Bernice Spencer alleges that the warrant application submitted by Staton and Brumley was facially invalid and unsupported by probable cause. Review of the Detectives' assertion of qualified immunity requires us first to ask "whether a reasonably well-trained officer...would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345, 106 S. Ct. 1092, 1098 (1986). The Detectives' determination that the warrant was valid entitles them to qualified immunity from suit unless, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue" under the circumstances. Id. at 341, 106 S. Ct. at 1096.

Staton's warrant application to the issuing judge is a textbook example of a facially invalid, "barebones" affidavit.[2]

arrest, but the arresting officer can otherwise establish probable cause at the scene. In contrast, this case concerns only a Malley claim, not one for false arrest.

[2]The warrant affidavit states:
BEFORE ME, the undersigned authority, personally came and appeared, LT. JACK STATON – DETECTIVE of SPSO P.O. BOX 1440, MANY, LA., Zip Code 71449, who, having been by me duly sworn, did depose and say that on the 24TH day of AUGUST, 2003, one BERNICE LOUISE SPENCER committed the offense of ACCESSORY AFTER THE FACT, LA.R.S.14:25 TO FIRST DEGREE MURDER, LA.R.S.14:30 within this state and Parish at PLEASANT HILL, LA. The affiant states that the accused committed the above described offense based on the following information: THIS SUBJECT DID HELP HER HUSBAND, JOHN GLENN SPENCER AND VASCO T. ZINNERMAN, EVADE LAW ENFORCEMENT OFFICERS AFTER THE TWO HAD COMMITTED ARMED ROBBERY AND FIRST

After reciting Spencer's biographical and contact information, the affidavit states nothing more than the charged offense, accompanied by a conclusory statement that Spencer assisted her husband and Zinnerman in evading Louisiana authorities. It does not supply the factual basis for probable cause necessary for issuance of an arrest warrant. See United States v. Pofahl, 990 F.2d 1456 (5th Cir. 1993); United States v. Brown, 941 F.2d 1300 (5th Cir. 1991).

Staton asserts, however, that he supplemented the affidavit with oral testimony based on his personal knowledge and investigation such that — in the aggregate — the information conveyed to the judge supports probable cause for Spencer's arrest. Because the Fourth Amendment does not require written warrants, an otherwise invalid warrant can be rehabilitated by sworn oral testimony before a judicial officer given contemporaneously upon presentation of the warrant application. United States v. Hill, 500 F.2d 315, 320 (5th Cir. 1974) ("It has been accepted principle in this and other circuits that a federal court...may consider an affiant's oral testimony, extrinsic to the written affidavit, which is sworn before the issuing magistrate, in determining whether the warrant was founded on probable cause"); Lopez v. United States, 370 F.2d 8, 10 (5th Cir. 1966) (probable cause analysis may take

DEGREE MURDER.
                    (signature of affiant)
Sworn to me and subscribed before me this 28th day of August 2003
                    (signature of judge)
                    Judge, 11th Judicial District Court

into account information "brought to the magistrate's attention...in the form of oral statements").[3]

The record in this case, after careful review, reveals significant uncertainty concerning what oral testimony Staton imparted to the issuing judge, and when he did so.[4] The judge's and Staton's sworn deposition statements are insufficient to demonstrate as a matter of law that Staton's testimony constituted "sufficient information to support an independent judgment that probable cause exists for the warrant." Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564, 91 S. Ct. 1031, 1035

---

[3]See, e.g., Owens ex rel. Owens v. Lott, 372 F.3d 267, 278 (4th Cir. 2004); United States v. Shields, 978 F.2d 943, 946 (6th Cir. 1992); United States ex rel. Gaugler v. Brierley, 477 F.2d 516, 521 (3d Cir. 1973); Leeper v. United States, 446 F.2d 281, 286 (10th Cir. 1971); United States v. Berkus, 428 F.2d 1148, 1152 (8th Cir. 1970). Cf. Kohler v. Englade, 470 F.3d 1104, 1111-12 (5th Cir. 2006) (officers cannot support an invalid warrant application with information known only by them but not communicated to the magistrate).

[4]We note that Staton's deposition testimony about conversations he had with the Sheriff and District Attorney is immaterial to our analysis here. See Frazier v. Roberts, 441 F.2d 1224, 1228 (8th Cir. 1971) (unsworn oral testimony delivered on a separate occasion to a nonjudicial officer cannot rehabilitate a subsequently acquired warrant).

7

(1971).[5]  Moreover, Staton does not allege that the statements he provided were made under oath.

Because Detective Brumley appears to have participated fully with Staton in the investigation, there is a material fact issue whether he was "in a position to see the whole picture, to understand his responsibility [under Malley], and thus fully to assess probable cause questions."  Michalik v. Hermann, 422 F.3d 252, 261 (5th Cir. 2005).  Michalik holds that "such an officer, who is not the affiant [who provided the affidavit to support an arrest warrant], may be held liable, along with the affiant, under the principles of Malley."  Id.  Michalik also notes, however, that Malley liability does not extend beyond the affiant and a person "who was fully responsible for" a warrant application.  Id.  Brumley may be in the latter position if the evidence reveals that he not only assisted in the investigation but also participated in preparation of the affidavit or presentation of the warrant and supporting affidavit to the judge.

For purposes of qualified immunity, the evidence in the record does not establish that, as a matter of law, a reasonable

---

[5]In addition, Spencer argues Staton sought to intentionally mislead the judge by falsely asserting that Spencer was "involved" in the murders and was "fleeing" the jurisdiction. Under Franks v. Delaware, 438 U.S. 154, 156, 98 S. Ct. 2674, 2676 (1978), the Fourth Amendment is violated when an official intentionally, or with a reckless disregard for the truth, includes false testimony in a warrant affidavit.  Our conclusion that the warrant is barebones, however, forecloses any Franks analysis.  See Kohler, 470 F.3d at 1114 ("The principles of Franks have never been applied to facially invalid warrants").

police officer could have believed the evidence he had was sufficient to constitute probable cause, justifying a warrant, for Bernice's arrest.[6]  The district court thus erred in finding the warrant constitutionally sufficient to justify Spencer's arrest.[7]

## C.    State Law Claims

Spencer has not alleged facts sufficient to support the various state law claims she asserts against the Appellees.  First, Spencer's malicious prosecution claim fails for want of any evidence that Brumley, Staton, or Pattison acted with malice.

Second, her defamation claim fails because she has not alleged that the Detectives published defamatory material about her or acted with malice in obtaining the arrest warrant.  See Arledge v. Hendricks, 715 So. 2d 135, 138 (La. Ct. App. 1998) (defamation actions under Louisiana law must allege five "essential elements," including publication and malice).

Third, whether or not the warrant for Bernice's arrest was supported by probable cause, the Detectives' behavior in this

---

[6]With respect to Bernice's minor children Shadow and Raevyn Spencer, however, Appellant has made no showing that they suffered the deprivation of any constitutional right or have any basis to allege a Malley violation against the Detectives or Sheriff Pattison.

[7]Appellant makes an additional, meritless constitutional claim that Defendants sought to arrest her as punishment for her marriage to John Spencer in violation of her First Amendment right to freedom of association.  The record is totally devoid of evidence supporting this proposition.  Record evidence indicates that Staton and Brumley pursued Appellant solely because they believed she was assisting in John Spencer's flight, not because of her status as his wife.

9

case does not meet the standard required for a claim of intentional infliction of emotional distress.  See <u>White v. Monsanto Co.</u>, 585 So. 2d 1205, 1209 (La. 1991) (requiring conduct to be "atrocious and utterly intolerable in a civilized society").

Fourth, the claim of false imprisonment, which subsumes Spencer's false-arrest claim, <u>see</u> <u>Murray v. Town of Mansura</u>, 940 So. 2d 832, 838 (La. Ct. App. 2006), fails because Spencer's arrest was made pursuant to "statutory authority." <u>Plaisance v. Thibodeaux</u>, 930 So. 2d 1009, 1012 (La. Ct. App. 2006) (quoting <u>Kyle v. City of New Orleans</u>, 353 So. 2d 969, 971 (La. 1977)).  So long as a warrant corresponds to the technical requirements of Article 203 of Louisiana's Criminal Procedure Code, a false imprisonment or false arrest claim cannot stand.[8]  <u>See</u> LA. CODE CRIM. PROC. ANN. art.

---

[8]Article 203 states:
The warrant of arrest shall:
(1)  Be in writing and be in the name of the State of Louisiana;
(2)  State the date when issued and the municipality or parish where issued;
(3)  State the name of the person to be arrested, or, if his name is unknown, designate the person by any name or description by which he can be identified with reasonable certainty;
(4)  State the offense charged against the person to be arrested;
(5)  Command that the person against whom the complaint was made be arrested and booked; and
(6)  Be signed by the magistrate with the title of his office.

The warrant of arrest may specify the amount of bail in noncapital cases when the magistrate has authority to fix bail.

LA. CODE CRIM. PROC. ANN. art. 203.

10

203; <u>Touchton v. Kroger Co.</u>, 512 So. 2d 520, 525 (La. Ct. App. 1987). Those requirements were satisfied here; Louisiana courts do not require an arresting officer to make an independent probable-cause determination of a warrant or supporting affidavit. <u>Id.</u>

**D. Sheriff Pattison**

As to Sheriff Pattison, we affirm the district court's ruling that Spencer has failed to produce any competent summary-judgment evidence to sustain her § 1983 claims. Unless they participated in the conduct, supervisors are not subject to § 1983 liability for the acts or omissions of their subordinates. <u>See</u> <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992). Spencer attempts to show a failure to adequately train subordinates, a claim that requires a causal connection between the failure to train and the violation of Spencer's rights, and that the failure to train amounted to deliberate indifference to Spencer's constitutional rights. <u>See</u> <u>Roberts</u>, 397 F.3d at 292. Even if Sheriff Pattison had subjective knowledge of Detective Brumley's and Staton's actions, Spencer fails to support her claim that Pattison acted with deliberate indifference to her constitutional rights. The exacting requirement of proving deliberate indifference "cannot be inferred from negligence alone." <u>Hernandez v. Tex. Dep't of Protective & Regulatory Servs.</u>, 380 F.3d 872, 884 (5th Cir. 2004). Moreover, proof of a single instance of officer misconduct is ordinarily insufficient to give rise to an

11

inference of the supervisor's deliberate indifference to training or supervision. <u>Thompson v. Upshur County, Tex.</u>, 245 F.3d 447, 459 (5th Cir. 2001).

**E.   Children's Claims**

There is no constitutional or state-law basis for the claims Spencer asserts on behalf of her minor children. The district court properly dismissed them.

**CONCLUSION**

For these reasons, we REVERSE the district court's summary judgment for Detectives Staton and Brumley solely on the <u>Malley</u> claim, AFFIRM for Sheriff Pattison and REMAND for further proceedings. We express no opinion on whether, at trial, Spencer or the detectives will prevail in their respective contentions.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion except with respect to the denial of qualified immunity to Detective Brumley.

In *Michalik v. Hermann*, 422 F.3d 252 (5th Cir. 2005), this court held, "[L]iability under *Malley* may lie not only against the affiant, but also against . . . an officer who actually prepares the warrant application with knowledge that a warrant would be based solely on the document prepared. . . . We are unwilling, however, to extend such liability . . . beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application." *Id.* at 261. In so holding, the *Michalik* court was interpreting a prior case, *Bennett v. Grand Prairie*, 883 F.2d 400 (5th Cir. 1989), where the lead investigating officer prepared the warrant application and knew that the application would be limited to what he prepared but was not the affiant. The affiant served only a perfunctory role in signing and presenting the warrant application but was not otherwise involved in the investigation.

According to this precedent, for Detective Brumley or any officer to face *Malley* liability he must either 1) be an affiant or 2) have prepared the warrant application with knowledge that a warrant would be based solely on the document he prepared. Even reading the record in favor of Ms. Spencer, I can find no record evidence indicating that Detective Brumley falls into either category. The record reveals that Detectives Brumley and Staton jointly investigated the crime. They together spoke with the prosecutor about probable cause prior to seeking the arrest warrant. The warrant affidavit was not typed by Detective Brumley, and no further evidence was developed as to who prepared the affidavit. Detective Brumley accompanied Detective Staton to the banquet Judge Beasley was attending, but Detective Brumley did not accompany Detective Staton for the actual

13

presentation of the warrant application to Judge Beasley. It is unclear where Detective Brumley was during the presentation, but Judge Beasley is explicit about the fact that Detective Staton was alone when he presented the warrant application, including the warrant affidavit and any additional oral submission of the evidence. There is nothing contradicting Judge Beasley's testimony and Ms. Spencer does not allege otherwise.

Based on this record evidence, it is clear that Detective Brumley, unlike Detective Staton, was not an affiant. He neither signed the warrant affidavit nor made any oral submissions of evidence to Judge Beasley. There is also no evidence that Detective Brumley prepared the warrant application, and any involvement he may reasonably have had, as the co-lead investigator, does not meet the standard for non-affiant liability contemplated in *Michalik*, namely "an officer who actually prepares the warrant application with knowledge that a warrant would be based solely on the document prepared." *Michalik*, 422 F.3d at 261. The *Michalik* court was explicit in denying liability to those officers who investigated the crime but for whom the plaintiffs could not establish any facts tying them to the preparation or presentation of the warrant application. *Id.* Narrowly applying *Malley* liability to non-affiants makes sense exactly for cases such as this one, where a facially deficient warrant application *may or may not* have been additionally supported by oral submissions of the presenting officer, Detective Staton)) submissions made outside of the presence of Detective Brumley.

I believe the majority opinion places too heavy a burden on Detective Brumley, denying him immunity where Ms. Spencer has not alleged any facts which would expose him to *Malley* liability and where the record reveals no such facts. "Where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, *the plaintiff then has*

*the burden* 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002) (emphasis in original). Because Ms. Spencer has not met this burden with respect to Detective Brumley, I would affirm the district court's grant of qualified immunity.