**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1826**

---

ABRAR OMEISH,

        Plaintiff - Appellee,

    v.

STACEY ANN KINCAID, Sheriff, Fairfax County,

        Defendant - Appellant,

    and

J PATRICK, Officer, Fairfax County Police Department,

        Defendant.

---

**No. 22-1878**

---

ABRAR OMEISH,

        Plaintiff - Appellant,

    v.

J PATRICK, Officer, Fairfax County Police Department,

        Defendant - Appellee,

    and

STACEY ANN KINCAID, Sheriff, Fairfax County,

Defendant.

----------------------------------

PUBLIC ACCOUNTABILITY,

> Amicus Supporting Appellant.

---

**No. 22-1936**

---

ABRAR OMEISH,

> Plaintiff - Appellant,

> v.

STACEY ANN KINCAID, Sheriff, Fairfax County,

> Defendant - Appellee,

> and

J PATRICK, Officer, Fairfax County Police Department,

> Defendant.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:21-cv-00035-LO-IDD)

---

Argued:  September 22, 2023                    Decided:  November 15, 2023

---

Before NIEMEYER, THACKER, and BENJAMIN, Circuit Judges.

---

2

No. 22-1826 dismissed and remanded; No. 22-1878 affirmed; and No. 22-1936 vacated and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Thacker and Judge Benjamin joined.

------

No. 22-1826. **ARGUED:** Philip Corliss Krone, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellant. Hannah Mullen, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellee. **ON BRIEF:** Alexander Francuzenko, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellant. Lena F. Masri, Gadeir I. Abbas, Justin Sadowsky, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellee.

No. 22-1878. **ARGUED:** Justin Mark Sadowsky, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellant. Dawn Boyce, MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C., Fairfax, Virginia, for Appellee. **ON BRIEF:** Lena F. Masri, Gadeir I. Abbas, Hannah Mullen, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellant. Emily K. Blake, MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C., Fairfax, Virginia, for Appellee. Athul K. Acharya, PUBLIC ACCOUNTABILITY, Portland, Oregon, for Amicus Curiae.

No. 22-1936. **ARGUED:** Gadeir Ibrahim Abbas, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellant. Philip Corliss Krone, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellee. **ON BRIEF:** Lena F. Masri, Justin Sadowsky, Hannah Mullen, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellant. Alexander Francuzenko, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellee.

3

NIEMEYER, Circuit Judge:

These three appeals were taken from orders entered in a single action arising from a traffic stop in northern Virginia.

On the evening of March 5, 2019, Fairfax County Police Officer Justun Patrick stopped Abrar Omeish for failing to stop at a red light before turning right. During the traffic stop, Ms. Omeish failed to comply with Officer Patrick's numerous commands, and Patrick then attempted to arrest her. As Omeish resisted, Officer Patrick deployed a burst of pepper spray to her forehead, which enabled him to take her into custody. While booking her at the Fairfax County Adult Detention Center, Sheriff Stacey Kincaid's officers required Omeish, a Muslim who wears a hijab, to remove it against her will for the purpose of taking booking photographs, as was prescribed by the Sherriff Office's standard operating procedures.

Omeish commenced this action, claiming that Officer Patrick used excessive force in arresting her, in violation of her Fourth and Fourteenth Amendment rights, and that Sheriff Kincaid was liable for her office's policy that disregarded Omeish's religious beliefs and practices by requiring her to remove her hijab, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000. Omeish sought, among other relief, damages for her excessive force claim and an injunction against Sheriff Kincaid, requiring her to destroy and have destroyed all photographs taken of Omeish without her hijab.

The district court dismissed Omeish's claim against Officer Patrick on the basis of qualified immunity, but it granted Omeish a permanent injunction, requiring Sheriff

4

Kincaid to destroy and use her best efforts to have destroyed all copies of the booking photographs of Omeish without her hijab. Thereafter, all photographs were in fact destroyed, prompting the court to conclude that the injunction's requirements had been fulfilled. Finally, the court denied Omeish's motion under 42 U.S.C. § 1988(b) for attorneys fees, applying the standard for assessing costs under Federal Rule of Civil Procedure 54(d)(1).

Sheriff Kincaid filed an appeal (No. 22-1826), seeking to reverse the district court's order that she violated Omeish's rights under the Religious Land Use and Institutionalized Persons Act; Omeish filed an appeal (No. 22-1878) from the court's order dismissing her claim against Officer Patrick; and Omeish filed an appeal (No. 22-1936) from the district court's order denying her motion for attorneys fees. As to Sheriff Kincaid's appeal, we dismiss it as moot and remand with instructions to vacate the district court's judgment. As to Omeish's appeal of the dismissal of her claim against Officer Patrick, we affirm. And as to Omeish's appeal of the district court's order denying her motion for attorneys fees, we vacate and remand.

I

After observing Omeish commit a red-light violation at about 8:00 p.m. on March 5, 2019, Officer Patrick pulled her over on a busy two-lane highway. After she stopped, her car was straddling the bike lane and the parking shoulder. When Officer Patrick arrived at the driver's side window, he had to stand next to the solid white line separating the bike

5

lane from the traffic lane of the highway, and cars passing the officer had to cross over the center line to give him space. This location, especially at night, posed a risk to the officer.

As several cars passed near him, Officer Patrick greeted Omeish, identified himself, and advised her that he had stopped her because she had run a red light. He then asked Omeish for her license and registration. Rather than comply with that request, Omeish stated that she did not believe she had run the red light. Officer Patrick repeated his request for her license and registration, and Omeish continued not to comply, repeating her denial of any violation and adding that she had to get to a meeting. Over the next couple of minutes, Officer Patrick made six separate requests for her documentation, and Omeish failed to comply with any of them. Officer Patrick then advised Omeish that she could either produce her license and registration or get out of the car and be arrested. Omeish did neither, stating that the options were "not fair." The officer then proceeded to arrest her, demanding that she step out of the car. Despite some thirteen separate requests that she get out of the car, Omeish refused. Officer Patrick then retrieved his handcuffs and reached into the vehicle to remove her physically. As he pulled on her arm and continued to instruct her some fourteen more times to get out of the car, she resisted, only then offering to produce her license. But she continued to refuse to exit the car. A struggle ensued and Omeish leaned toward the passenger side, bringing a dark object toward Officer Patrick, which he could not identify but which was her phone. At that point, given the struggle at the edge of a busy highway at night, Officer Patrick chose to use pepper spray to effectuate the arrest, deploying one burst directed at Omeish's hairline. Officer Patrick

6

was then able to remove her from the car and handcuff her. He transported her to the Fairfax County Adult Detention Center, where she was booked.

Under the Fairfax County Sheriff's Office Standard Operating Procedures, officers were required to capture booking photographs of arrestees without wearing any religious head coverings. When Omeish heard that she would be required to remove her hijab, she protested, repeatedly telling the officers that her religious beliefs prohibited her from appearing publicly or being photographed without her hijab. In particular, she explained that she wore her hijab in the presence of men with whom she was not related and had done so since she was a young child.

The officers nonetheless made clear to Omeish that she needed to remove her hijab. While a female deputy undertook the booking process, Omeish remained throughout the process in the view of male deputies, including Officer Patrick. In an attempt to give Omeish some privacy, two male officers held up a small blanket that partially obscured the view of Omeish on one side, but on the other side, male deputies still had a view of her.

Omeish asked if she could pull her hijab back behind her ears without taking it off. The officers refused, however, and the female deputy removed the hijab from Omeish's head and took at least two photographs of Omeish without her hijab. The officers then allowed Omeish to loosely drape the scarf back over her head before taking one more photograph. After the booking process was finished, Omeish was told that she was free to leave.

Almost two years later, in January 2021, Omeish commenced this action against Sheriff Kincaid in her official capacity, the Fairfax County Police Department, and Officer

7

Patrick in his individual capacity, alleging violations of her rights under the First and Fourteenth Amendments of the Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Thereafter, Omeish amended her complaint to add Chief David M. Roher of the Fairfax County Police Department as a defendant in his official capacity. In her complaint, Omeish alleged that her religious beliefs had been unlawfully burdened when she was required to remove her hijab for the booking photographs. She also alleged that Officer Patrick used excessive force in arresting her with pepper spray.

The district court dismissed in part the claims against Sheriff Kincaid and in full the claims against Police Chief Roher. Following discovery, Officer Patrick filed a motion for summary judgment on Omeish's excessive force and First Amendment claims, and Omeish filed a motion for summary judgment against Sheriff Kincaid on her First Amendment and RLUIPA claims.

On Officer Patrick's motion, the court granted him summary judgment, finding that he was protected by qualified immunity because existing precedent did not support a conclusion that he violated a right that was clearly established. On Omeish's motion for summary judgment against Sheriff Kincaid on her RLUIPA claim, the court concluded that Sheriff Kincaid had failed to adduce evidence demonstrating a genuine dispute of fact as to whether the retention of the booking photographs was the least restrictive means of furthering a compelling government interest. Accordingly, the court awarded Omeish narrow injunctive relief — the destruction of all copies of the photographs of Omeish without her hijab. Not only did the court order that Sheriff Kincaid destroy all copies in

8

her office's possession, but also that she issue written requests to all other entities she had reason to believe were custodians or possessors of the photograph — which turned out to include the Virginia State Police, the Fairfax County Police Department, and the FBI — asking that they also destroy the photographs. Sheriff Kincaid reported to the court later that all the offending photographs had been destroyed, including those that had been forwarded to third parties.

Following the entry of final judgment, Omeish filed a motion under 42 U.S.C. § 1988(b) for attorneys fees in the amount of $251,636. Applying the standard for awarding costs under Federal Rule of Civil Procedure 54(d)(1), the district court denied Omeish's motion for attorneys fees.

Sheriff Kincaid filed an appeal (No. 22-1826), challenging the district court's summary judgment against her, which held that she had violated the provisions of RLUIPA. Omeish filed an appeal (No. 22-1878) from the district court's order dismissing her claim for excessive force against Officer Patrick. And Omeish also filed an appeal (No. 22-1936) from the district court's order denying her attorneys fees.

II

We address first Sheriff Kincaid's appeal (No. 22-1826) of the district court's permanent injunction dated July 22, 2022, ordering her to destroy and request destruction of all booking photographs of Omeish without her hijab and to report back to the court confirming that the injunction had been complied with. Following Sheriff Kincaid's reports of compliance with the injunction in full, the district court reported that Omeish's

counsel had "agreed that nothing more was necessary to be accomplished," and it effectively ended the court's supervision of the injunction.

As the basis for entering the injunction, the district court granted Omeish's motion for summary judgment on her RLUIPA claim, concluding, after setting forth the applicable jurisprudence, that

> no factfinder could hold that there is a compelling interest that would not be served by the less restrictive retention of a photograph of Omeish wearing a hijab. As Sheriff Kincaid has pointed to no evidence that using a photograph of Omeish covered with a hijab could not be used for the asserted identification purposes, there is no genuine dispute to this element of the RLUIPA claim. Because it is the Defendant's burden to prove this element, Sheriff Kincaid cannot prevail on Summary Judgment . . . .
>
> *        *        *
>
> [T]here is no compelling government interest in the retention of [Omeish's] uncovered photograph. For this reason, summary judgment is granted for the Plaintiff and Omeish will be awarded the narrow injunctive relief she seeks.

On appeal, Sheriff Kincaid raises several challenges to the court's award of summary judgment, arguing that it "was the result of misapplying the law of the case, statutory standards, procedural standards, and legal standards." She argues that there were disputed facts and that the district court incorrectly applied RLUIPA's burden shifting provisions.

Omeish, however, filed a "Suggestion of Mootness" in this court, arguing that since "the photographs have now all been destroyed," "[t]his case is moot," and Sheriff Kincaid's appeal should be dismissed. Sheriff Kincaid opposes dismissal, arguing that her appeal is not moot for three reasons.

10

First, Sheriff Kincaid contends that her appeal challenges more than the order granting injunctive relief. She notes that in her complaint Omeish asked for a declaratory judgment and that "the district court's award of summary judgment declar[ed] a RLUIPA violation." Thus, she argues, "even if the issue of injunctive relief [were] moot," there is still a live ruling "*declaring* there was a violation of RLUIPA" (emphasis added), and the parties remain affected by that declaration. We, however, reject the argument. While it is true that Omeish sought declaratory relief, injunctive relief, and damages in her complaint, the *only* relief that the district court granted her was a narrow permanent injunction requiring the destruction of the offending photographs. Nowhere in the district court's opinion did it suggest that it was entering a declaratory judgment on the RLUIPA claim. The court did, to be sure, find that Sheriff Kincaid had violated Omeish's rights under RLUIPA, but that finding was a necessary prerequisite for the entry of the injunction, as the court clearly explained.

Second, Sheriff Kincaid notes that Omeish's appeal of the district court's denial of her motion for attorneys fees "is dependent on the summary judgment ruling *declaring* a violation of RLUIPA," and "[w]ithout the award of summary judgment, Omeish would have absolutely no basis to seek attorney's fees to begin with." (Emphasis added). Thus, she argues, the judgment in this regard also remains a live one. Again, we disagree for two reasons. First, as already pointed out, there was no summary judgment *declaring* a violation of RLUIPA. The summary judgment was entered to support the entry of the court's order granting injunctive relief. Second and even more telling, Omeish's request for attorneys fees is not interlocked with the summary judgment for the purpose of

11

Article III jurisdiction. Such a position contravenes the Supreme Court's clear statements that "[a] request for attorney's fees or costs cannot establish standing because those awards are merely a 'byproduct' of a suit that already succeeded, not a form of redressability." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (acknowledging that a party's "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"); *Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018) (relying on this "well established" rule to dismiss an appeal as moot).

Third and finally, Sheriff Kincaid argues that the injunction itself does not contain any deadline for the destruction of photographs. As a consequence, she reasons, "if in the future Omeish believes that another entity or individual had obtained a copy of the photograph, then Sheriff Kincaid [could] still be subject to the injunction's requirement that she use her best efforts to have that photograph destroyed." That prospect, however, is simply too speculative to overcome mootness. The risk that some additional copy of the photograph exists unbeknownst to the parties is exceedingly remote. The parties agreed that *all known photographs* had been destroyed, and Omeish stated, as reported by the district court, that "nothing more was necessary to be accomplished." *See, e.g.*, *Bunting v. Mellen*, 541 U.S. 1019, 1021 (2004) (Stevens, J., statement respecting the denial of certiorari) (denying certiorari because the case was moot *despite a remote chance* that a retired superintendent could return to his post at a school).

12

Accordingly, we agree with Omeish that Sheriff Kincaid's appeal is moot.

In such a circumstance, "[o]ur 'customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment.'" *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 589 (4th Cir. 2016) (quoting *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010)); *see also Eden, LLC v. Justice*, 36 F.4th 166, 172 (4th Cir. 2022) (quoting *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 327 (4th Cir. 2021)).  The parties have offered no reason or suggestion why we should deviate from this practice, and the procedural history of this case suggests that we should follow it.  Because the district court enforced the injunction and denied Sheriff Kincaid's motion to stay the injunctive order and because we also denied a stay, Kincaid was compelled to comply with a presumptively valid injunctive order.  As a result, she was frustrated from securing appellate review of the district court's summary judgment ruling, which thus provides a "sufficient reason to vacate" the judgment below.  *Catawba Riverkeeper Found.*, 843 F.3d at 592 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3 (1994)).

Accordingly, we dismiss Sheriff Kincaid's appeal as moot and remand with instructions that the district court vacate its summary judgment on Omeish's RLUIPA claim against Sheriff Kincaid.

### III

We next address Omeish's appeal (No. 22-1878) of the district court's order granting summary judgment to Officer Patrick on her claim that he used excessive force

13

during her arrest by deploying a burst of pepper spray to her forehead. The district court

held that Officer Patrick did not violate a right that was *clearly established* and that he

therefore was entitled to qualified immunity. Because of that holding, the court did not

address whether the facts showed that Officer Patrick's use of force was objectively

unreasonable, such that it violated Omeish's Fourth Amendment rights.

The district court set forth the undisputed facts upon which it relied to make its

decision that the right was not clearly established. It stated:

> The material undisputed facts of the arrest make this case particularly distinct
> from the legal precedent cited. These facts include that Omeish was pulled
> over on the side of the road; the traffic stop occurred at night; Officer Patrick
> approached the vehicle on the driver's side with his back to the roadway and
> significant traffic; and that Officer Patrick requested that Omeish present her
> driver's license up to sixteen times; Omeish did not comply with these
> requests, and Officer Patrick attempted to physically remove Omeish from
> the vehicle. While the degree to which Omeish resisted this attempt to
> remove her may be disputed, it is undisputed that Omeish did not comply
> with Officer Patrick. At this point Patrick utilized his pepper spray and
> removed her from the vehicle.

> This situation with which Officer Patrick was presented was undoubtedly
> "tense, uncertain, and rapidly evolving," [and] [m]ost importantly to the
> analysis of Omeish's arrest is that it took place on the side of a "busy
> roadway."

> *          *          *

> The fact that the arrest in the current case took place on the side of a road,
> with passing traffic, undoubtedly indicates that Patrick had more potential
> hazards to consider than an officer who made a similar arrest away from a
> roadway. Although Omeish argues that she presented no danger to the larger
> police officer, there is no persuasive argument that the resistance of a police
> officer's commands and physical interactions, in that situation, is not
> inherently dangerous. While Omeish herself might not have been a direct
> physical threat, the undisputed record shows that it is reasonable for Officer
> Patrick to assume that a prolonged struggle during a roadside arrest is
> inherently dangerous to both Omeish and Officer Patrick.

14

(Citations omitted).

The principles of qualified immunity are well established. Law enforcement officers are entitled to qualified immunity from claims under 42 U.S.C. § 1983 unless (1) they violated a statutory or constitutional right and (2) the right was clearly established at the time. *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). And the "clearly established" requirement means that "at the time of the officer's conduct, the law was sufficiently clear that *every* reasonable official would understand that what he [was] doing is unlawful." *Wesby*, 583 U.S. at 63 (emphasis added) (cleaned up). Thus, the law must have placed the constitutionality *of the officer's conduct* "beyond debate," such that "all but the plainly incompetent or those who knowingly violate the law" are protected. *Id*. (cleaned up).

The Supreme Court has repeatedly focused on the second requirement, emphasizing that to hold officers liable, the unlawfulness of their actions must be clearly established, which the Court has defined by several measures. The law must be both (1) settled, *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam), and (2) controlling, *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011); *see also Wesby*, 583 U.S. at 63. Also, the law must not be established at a high level of generality but must apply clearly to the *particular* circumstances of the officer's conduct. *See Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). And a precedent is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Finally, the Court has stressed that "[s]uch specificity is especially important" for claims charging officers with excessive force under

15

the Fourth Amendment, *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam), leading the Court to emphasize the need to identify caselaw addressing similar circumstances — cases "where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam); *see also Mullenix*, 577 U.S. at 13. The Court has noted that this careful comparison is important because of the great number of variations in fact involved in seizures implicating the Fourth Amendment. *See Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017); *Mullenix*, 577 U.S. at 12. For this reason, it has recognized that officers often find it difficult to determine how the Fourth Amendment's general reasonableness standard applies to the particular factual circumstances confronting them. *See Ziglar*, 582 U.S. at 151.

With these principles in hand, we turn to determine whether, based on the undisputed facts of record in this case, the district court erred in finding that Officer Patrick was qualifiedly immune from Omeish's claim of excessive force.

Whether the force used in making an arrest during a traffic stop is excessive must be determined by a standard of objective reasonableness. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). And objective reasonableness, in turn, is measured by the "proportionality of the force in light of all the circumstances." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994)). The relevant circumstances include, among others, the severity of the offense, the risks posed to the officers in effecting the arrest, the extent to which the person being arrested is resisting or attempting to evade arrest, and whether the officer applied an established technique. *See Graham*, 490 U.S. at 396.

16

In this case, Officer Patrick conducted the traffic stop for a minor traffic infraction, which should not ordinarily require the use of force. But the relevant factors also include that Omeish did not behave as normally expected during such a stop: she resisted providing the officer with her driver's license and registration despite numerous commands to do so; she rejected the officer's option to either provide the required documentation or be arrested; she disobeyed the officer's numerous commands to exit the car to be arrested; and she resisted the officer's physical efforts to arrest her while he stood near oncoming traffic at night. After more than four minutes of this resistance, Officer Patrick deployed a single burst of pepper spray to Omeish's forehead, enabling him to place her in handcuffs.

The use of pepper spray can, in given circumstances, be objectively unreasonable and therefore constitute excessive force, in violation of the Fourth Amendment. But whether the use of pepper spray is unreasonable depends on the particular circumstances confronting the officer. In *Park v. Shiflett*, we addressed the use of pepper spray during a seizure and found that its use was indeed unreasonable in the circumstances presented there. 250 F.3d 843, 853 (4th Cir. 2001). In *Park*, a female bystander, observing her husband being arrested with the use of force, ran towards him, leading the officers to grab her, twist her arm behind her back, throw her against a building wall, and handcuff her. Then, after she had been secured, officers discharged pepper spray twice into her eyes at short range, in violation of the governing Rules and Regulations Manual. *Id*. at 848 & n.1. We concluded that in those circumstances, the use of pepper spray "was indeed excessive." *Id*. at 853; *see also id*. at 854 (Traxler, J., concurring in part and dissenting in part) (same). This *controlling* precedent thus informed officers that the use of pepper spray in connection

17

with an arrest does, in the particular circumstances of *Park*, amount to excessive force, in violation of the Fourth Amendment.

Our decision in *Park*, however, does not squarely govern the case before us. *See Wesby*, 583 U.S. at 63 (noting that precedent must "clearly prohibit the officer's conduct in the particular circumstances before him"). Unlike the officer in *Park*, Officer Patrick used pepper spray to take control of the arrestee, and he did not use it after placing Omeish in handcuffs. But while those distinctions are material and tend to support a conclusion that Patrick's use of force was not excessive, other circumstances complicate the analysis. For example, Omeish insists that she was at most passively resisting, that her slight frame posed no physical threat to the larger officer, and that the pepper spray was unnecessary because, by the time it was deployed, she had offered Patrick her license numerous times. In light of these circumstances, we choose not to determine, as a matter of law, whether Officer Patrick's use of pepper spray violated *vel non* the Fourth Amendment.

Rather than decide the qualified immunity issue under the first prong — whether Officer Patrick actually violated the Fourth Amendment — we elect to resolve it under the second prong — whether a violation was *clearly established* such that every officer in Officer Patrick's circumstances would have understood that he was violating the Fourth Amendment. *See Pearson*, 555 U.S. at 236 (holding that a court may, without deciding whether there was a constitutional violation, look to the question of whether that right was "clearly established"). For the following reasons, we conclude that in this case, the law was not clearly established.

18

As noted, when assessing whether a right is clearly established, we look to Supreme Court and Fourth Circuit authority to "consider whether officers within our jurisdiction have been provided fair warning, with sufficient specificity, that their actions would constitute a deprivation of an individual's constitutional rights." *Betton v. Blue*, 942 F.3d 184, 193–94 (4th Cir. 2019). When categorizing like cases, we must take care to carve at the joints. For, as noted, qualified immunity kicks in "unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Mullenix*, 577 U.S. at 13). And careful comparisons are especially necessary in cases involving excessive force because highly variable and fast moving circumstances inform whether the force was excessive. *See City of Tahlequah v. Bond*, 142 S. Ct. 9, 12–13 (2021) (per curiam).

In this case, the issue, defined by the circumstances, is whether Omeish had a clearly established constitutional right not to be pepper sprayed after repeatedly failing to comply with the officer's commands during a lawful roadside stop and resisting his attempts to arrest her in a location dangerous to the officer. Thus, the question is whether a reasonable officer in Officer Patrick's position would have had adequate notice that his use of pepper spray violated Omeish's right.

The only case in our circuit that even addresses whether the use of pepper spray in connection with a Fourth Amendment seizure is reasonable is *Park*, but that decision does not sufficiently inform officers about the use of pepper spray in Officer Patrick's circumstances. Critically, in *Park*, the pepper spray was used *after* the woman was secured in handcuffs, and its use was not only unneeded, but it also violated governing police

19

procedures. *See Park*, 250 F.3d at 848 & n.1. Those circumstances differ materially from those here, where the officer faced an escalating situation over the course of four minutes in which Omeish disobeyed his orders both to produce documentation and to exit the car and resisted his efforts to arrest her. The officer used the pepper spray only once with a burst at her forehead, while in the process of attempting to take control over her person. Moreover, the officer's use of pepper spray here complied with governing police procedures, as later found during a hearing held by the Chief of Police. *Park* thus does not inform officers in the circumstances facing Officer Patrick that the use of pepper spray was clearly unlawful — *i.e.*, that it was "beyond debate."

To argue that the law was clearly established in this circuit, Omeish relies primarily on our decision in *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th Cir. 2016). In *Armstrong*, after a mentally ill patient eloped from a hospital, police officers sought to execute an involuntary commitment order by physically seizing him and returning him to the hospital. Armstrong resisted, however, by wrapping himself around a pole with both his arms and his legs. As officers tried to pry him off the pole, he continued to resist, and the officers were unsuccessful in removing him by that method. After 30 seconds of struggling and warning Armstrong that he would be tased, the officers then tased him five times. After he gave up his grip, the officers held him face down on the ground where he died from asphyxiation. While we found the officers qualifiedly immune, we ruled that tasing was excessive force in the particular circumstances confronting the officers. *See id*. at 909. We did not hold that the use of a taser always amounted to

20

excessive force but instead defined Armstrong's right as the "right not to be subjected to tasing while offering stationary and non-violent resistance to a lawful seizure." *Id*. at 907.

We cannot conclude that the *Armstrong* holding would inform every officer — beyond debate — that it would be unlawful to use pepper spray during a traffic stop in the circumstances that Officer Patrick faced. *Armstrong* involved (1) tasers, (2) the seizure of a mentally ill man who had committed no crime, (3) the use of a taser after only 30 seconds, and (4) the use of a taser five times against someone passively resisting. While we did, in *Armstrong*, refer to our decision in *Park* as an example of excessive force, *see Armstrong*, 810 F.3d at 905, we did not hold or even suggest that *Park*'s holding clearly established that the use of tasers in *Armstrong* amounted to excessive force.

Omeish has attempted to rely on other Fourth Circuit cases, but they are yet less relevant. In *Meyers v. Baltimore County*, an officer used excessive force when he tased a person after he had already been restrained and was not actively resisting arrest. 713 F.3d 723, 733–34 (4th Cir. 2013). In *Rowland*, we held force excessive when the officer punched the arrestee, threw him to the ground, and applied a wrestling maneuver in circumstances where there was no danger to "the larger, trained police officer." 41 F.3d at 172, 174. In *Smith v. Ray*, we found the force was excessive when the officer punched the arrestee, threw her to the ground after she pulled her arm away as the officer attempted to handcuff her, jumped on her, handcuffed her, and then "yanked her to her feet by her hair." 781 F.3d 95, 98–99 (4th Cir. 2015).

None of these cases inform reasonable officers about whether the use of pepper spray in the circumstances of this case crossed constitutional lines. As the Supreme Court

21

has repeatedly emphasized, the cases must be factually similar so that the officer understands how the legal determination of excessive force "will apply to the factual situation the officer confronts." *Bond*, 595 U.S. at 12–13 (cleaned up). The Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Wesby*, 583 U.S. at 64 (cleaned up). And the Fourth Circuit precedents cited by Omeish clearly do not meet that standard.

Omeish has also pointed to cases in other circuits that are not controlling in our circuit but which, nonetheless, are factually more similar than the ones from this court. For instance, she cites the Ninth Circuit's decision in *Young v. County of Los Angeles*, 655 F.3d 1156, 1158–59 (9th Cir. 2011), where the court held that the use of pepper spray on a nonviolent misdemeanant constituted excessive force. The police officer there had pulled Young over for failing to wear a seatbelt. When Young exited his truck, walked over to the officer's motorcycle, and handed the officer his license and registration, the officer instructed Young to return to his truck. Young, however, refused and instead sat on the sidewalk to eat a snack of broccoli. After Young repeatedly balked at the officer's commands to return to his truck, the officer pepper sprayed Young while he was seated on the sidewalk. The court held that the use of pepper spray in those circumstances constituted excessive force. *Id*.

But in circumstances yet more similar to those presented here, the Tenth Circuit in *Mecham v. Frazier*, 500 F.3d 1200, 1202–04 (10th Cir. 2007), ruled that the use of pepper spray did not constitute excessive force. In *Mecham*, the officer pulled Mecham over for driving five miles over the speed limit and failing to wear a seatbelt. During the stop,

22

Mecham initially cooperated with the officer as he advised her why he pulled her over by complying with the officer's commands to provide her license and registration. But when the officer questioned the validity of her license, Mecham answered a cellphone call and did not comply with the officer's command to place the phone down. The officer told Mecham that he would arrest her if she refused to end the phone conversation. When she refused, the officer called a tow truck. When the tow truck came, Mecham refused to get out of the vehicle, despite the officer's command. The officer then used pepper spray to physically remove her from the vehicle and handcuff her. The encounter occurred on a narrow shoulder of a busy interstate. The court held that the officer's use of pepper spray in those circumstances did not constitute excessive force. *Id.*

While neither of these cases was controlling in the Fourth Circuit, they nonetheless indicated to officers generally that whether the use of pepper spray amounts to excessive force was highly dependent on the particular circumstances and that no rule was well settled in the circumstances that Officer Patrick faced.

At bottom, we conclude that there was no clearly established legal precedent set by the Supreme Court, the Fourth Circuit, or the general consensus of persuasive authority governing the question presented here and so informed a reasonable officer. Accordingly, we affirm the district court's order dismissing Omeish's Fourth Amendment claim based on qualified immunity.

23

IV

Finally, we address Omeish's appeal (No. 22-1936) of the district court's order denying her motion under 42 U.S.C. § 1988(b) for attorneys fees. In her motion, Omeish claimed that in obtaining the injunction against Sheriff Kincaid, she effected a material alteration in her relationship with the Sheriff and therefore was a prevailing party with regard to her RLUIPA claim. She sought $251,636 in attorneys fees and $1,057.76 in non-taxable costs.

Two days after Omeish filed her motion for attorneys fees, Sheriff Kincaid filed an objection to Omeish's "Bill of Costs," which Omeish had filed two weeks earlier. In the bill of costs, Omeish requested that $6,605.95 of costs be taxed under Federal Rule of Civil Procedure 54(d)(1). In opposing Omeish's bill of costs, Sheriff Kincaid argued that the taxation of costs "would be unjust due to the closeness and difficulty of the case and limited value of [Omeish's] victory." But at that time, Sheriff Kincaid had not yet filed a response to Omeish's motion for attorneys fees, nor was a response then due.

Less than ten days later, on August 25, 2022, the district court, without the benefit of Sheriff Kincaid's response to Omeish's attorneys fees motion, nonetheless denied Omeish's § 1988 motion for attorneys fees, applying the standard given by Rule 54(d)(1) for the taxation of costs.

On appeal, Omeish contends that the district court, which "act[ed] before briefing on the issue was completed," "used the wrong test, believing that, like an award of costs, granting or denying fees was in the District Court's broad discretion." She urges that we reverse and remand for application of the correct standard.

24

Sheriff Kincaid agrees that the district court, "in discussing its denial [of Omeish's motion for attorneys fees], references a standard applied to bill of costs, rather than [the § 1988] standard." She argues, however, that the court's denial, "which was *sua sponte*, nonetheless provides a sufficient basis for denying attorney's fees [under the § 1988] standard."

Section 1988 provides in relevant part: "In any action or proceeding to enforce a provision of . . . the Religious Land Use and Institutionalized Persons Act of 2000, . . . the court, in its discretion, may allow the prevailing plaintiff . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). But while the language of § 1988 specifies that such an award falls within the district court's discretion, that discretion has been significantly narrowed such that "a prevailing plaintiff *should ordinarily* recover an attorney's fee *unless special circumstances* would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (emphasis added) (cleaned up); *see also N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980) (noting that the district court's discretion in such circumstances "is narrow"); *Brandon v. Guilford Cnty. Bd. of Elections*, 921 F.3d at 194, 198 (4th Cir. 2019) (noting that "we have not hesitated to reverse district courts that have found 'special circumstances' where none existed"). This narrowing of discretion was ordered as a matter of public policy — "the policy of facilitating access to judicial process for the redress of civil rights grievances." *Brandon*, 921 F.3d at 198; *see also Hensley*, 461 U.S. at 429.

Federal Rule of Civil Procedure 54(d)(1), on the other hand, provides that "costs — other than attorney's fees — should be allowed to the prevailing party" unless the court

25

otherwise directs.  We have held that the Rule creates a "presumption that costs are to be awarded to the prevailing party" unless the district court finds that the presumption is overcome "by articulating some good reason for doing so" — *i.e.*, "only when there would be an element of injustice in a presumptive cost award." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999) (cleaned up).  And "the district court is given discretion to deny the award." *Id*.

Thus, under § 1988(b), a prevailing party *should ordinarily* be awarded reasonable attorneys fees unless *special circumstances* would render them *unjust*, whereas under Rule 54(d)(1), a prevailing party is *presumed* to be entitled to an award of costs unless the court finds an element of *injustice* in doing so.  Of course, § 1988 provides for the award of *attorneys fees* in civil rights cases, while Rule 54(d)(1) provides for the presumptive award of *costs*, not attorneys fees, in cases generally.  By addressing Omeish's motion under the incorrect legal standard, the district court erred.

While Omeish invites us to conduct the appropriate analysis under § 1988, we conclude that it is better for the district court, in the first instance, to do so.  Based on the arguments of the parties, there seem to be issues about whether Omeish is a "prevailing party," whether "special circumstances" exist to deny fees, and, of course, the proper amount of fees to be awarded, if any.

Accordingly, we vacate the district court's August 25, 2022 order denying Omeish's motion for attorneys fees and remand for consideration of her motion under the § 1988(b) standard.

\*      \*      \*

26

In sum, on No. 22-1826, we dismiss the appeal as moot and remand; on No. 22-1878, we affirm; and on No. 22-1936, we vacate and remand.

IT IS SO ORDERED.