**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-7199**

_____

ALBERT ANDERSON,

   Plaintiff – Appellant,

v.

OFFICER B. FERGUSON; OFFICER LAVALLY; OFFICER BOISSEY,

   Defendants – Appellees,

------------------------------

JAMES SCOTT BALLENGER; ROBERT O'BOYLE; ANTHONY VALDEZ; CATHERINE EMILY STETSON,

   Court-Assigned Amici Counsel.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, Senior District Judge.  (1:20-cv-00596-LCB-LPA)

_____

Argued:  December 12, 2024      Decided:  July 31, 2025

_____

Before DIAZ, Chief Judge, HEYTENS and BENJAMIN, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Benjamin wrote the majority opinion, in which Chief Judge Diaz joined.  Judge Heytens wrote an opinion dissenting in part.

_____

**ARGUED:**  Robert O'Boyle, Anthony Valdez, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Court-Appointed Amicus Counsel.  James R.

Morgan, Jr., WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Erica Hashimoto, Director, Mary Borchers, Student Counsel, Zacharia Hasan, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

Based on a confidential informant's tip, police approached Albert Anderson on suspicion of possessing drugs and a weapon. Upon their approach, Anderson fled. Officer B.A.M. Ferguson chased Anderson on foot, tackled him, and handcuffed him with the help of other officers. While Anderson was handcuffed, Ferguson used a mandibular angle pressure point technique behind Anderson's ear to prevent him from moving during a search of his person. Anderson claimed Ferguson's use of this technique violated his civil rights. At summary judgment, the district court rejected Anderson's claim. Because the right at issue was not clearly established, we affirm. We further affirm the district court's denial of Anderson's motion to amend.

I.

Ferguson received a tip from a confidential informant that a Black male with dreadlocks driving a red moped arrived at an apartment complex on Gregory Street in Winston-Salem, North Carolina, pulled a black handgun out of his pocket, and pointed it at a dog. The informant also advised Ferguson that the man may have possessed drugs.

In response, Ferguson, with Officer S.D. Wagoner as a passenger, drove his unmarked police vehicle equipped with blue lights to the area and parked in view of the apartment building. It was raining at the time. The informant advised Ferguson that the man was leaving the apartment complex. Shortly thereafter, Ferguson observed a Black male with dreadlocks leaving the apartment complex on a red scooter without a helmet and without a tag on the scooter, both in violation of local laws. Ferguson began to follow the

3

scooter and observed the driver pull over to the side of the road.  Ferguson activated his blue lights and pulled up behind the driver.  The driver of the scooter, later identified as Anderson, attempted to push off of the sidewalk to steer away from the police.

In response, one officer yelled, "Don't run!"  Bodycam footage ("Video") at 0:33–34.  Ferguson drove alongside the scooter and pinned the front wheel of the scooter against the sidewalk, preventing Anderson from driving any further.  Anderson jumped off the scooter and ran in the opposite direction of the vehicle.  Ferguson exited the vehicle and chased Anderson on foot.[1]  Ferguson observed Anderson reach into his pockets while he was running.

During the chase, Anderson ran behind a white SUV, which temporarily obscured him from Ferguson's view and that of Ferguson's bodycam.  Video at 00:37–48.  A few seconds later, Anderson returned to the view of the camera and continued to run in the middle of the street.  Video at 00:42–47.  As Anderson was running, his pants began to fall, causing him to trip and fall face-first on the street.  Video at 00:47–52.  Anderson attempted to get up, appearing to again reach for his pockets before Ferguson tackled him.  Video at 00:52–54.  In the momentum of the chase, Ferguson also fell while trying to tackle Anderson.  Video at 00:54–55.

As he was falling, Ferguson reached for Anderson, grabbed a handful of Anderson's hair, and released Anderson's hair when he got a grip on Anderson's body.  Video at 00:55–

---

[1] The wedged scooter initially prevented Wagoner from opening the passenger door, so he joined the chase later.

58. Ferguson pinned Anderson to the ground and demanded to see his hands. Video at 00:56–59. At this point, Wagoner and Sergeant R.T. Phillips arrived to help Ferguson arrest Anderson. In the struggle, two of Anderson's dreadlocks fell to the ground, and several items fell out of his pockets and onto the street. Video at 00:55–58, 1:12.

Anderson remained face down on the pavement with his pants down while Wagoner, who knelt on Anderson's buttocks, and Phillips, who knelt on Anderson's shoulder, assisted Ferguson in securing Anderson's arms. Video at 0:55–1:10. During the encounter, Wagoner struck Anderson in his lower back in an effort to secure Anderson's arm. Anderson continued to move on the ground while officers attempted to secure his second arm. Video at 1:12–17. In response, Ferguson yelled, "Stop, dude!" after which Anderson appeared to rock back and forth on the ground. In response to this movement, Ferguson again told Anderson to "stop moving." Video at 1:15–26.

Once Anderson was handcuffed, Ferguson placed his hand over his body camera, apparently in an effort to adjust its view, obscuring Anderson from view. Video at 1:27–38. When Ferguson removed his hand, Wagoner remained kneeling on Anderson's buttocks, and Phillips was walking away. Video at 1:39–40. Ferguson bent down and told Anderson to stop moving as Anderson rocked back and forth. Video at 1:40–43. Ferguson then grabbed Anderson by his hood and said, "Didn't I say stop fucking moving?" Video at 1:45–46. Immediately thereafter, Ferguson pressed his thumb behind Anderson's left ear and held it there for approximately nine seconds, a technique known as the mandibular

5

angle pressure point technique. J.A. 96 ¶ 10, 190[2]; Video at 1:47–56. Anderson remained conscious, blinking throughout these nine seconds. Video at 1:47–56. While Ferguson pressed his thumb behind Anderson's ear, Wagoner remained in a kneeling position on Anderson's buttocks. Video at 1:56–59.

The officers then conducted a search of Anderson's person, rocking him back and forth to obtain access to his various pockets. Video at 1:58–2:12, 2:30–37, 3:37–47. During the search, Anderson stated that he couldn't breathe, complained about the handcuffs being too tight, asked officers to pull up his pants, and identified Ferguson by name. Video at 2:11–39, 3:00–40. Ferguson responded that Anderson could breathe and that he would not adjust the handcuffs at that time. *Id.* Ferguson also stated that Anderson should have listened and should not have been fighting. Video at 2:39–3:30.

During the search, the officers found a digital scale, an unlabeled pill bottle with two pills, and a "large baggie" that contained what was later identified as marijuana, cocaine, heroin, and psilocybin mushrooms. J.A. 96–97 ¶ 11; Video at 2:47–3:15. The officers also recovered $1,000 cash from Anderson's sock. J.A. 97 ¶ 11; Video at 10:00–42. Following the search, the officers pulled up Anderson's pants and raised him off the ground. Video at 3:51–4:15. Once standing, Ferguson adjusted Anderson's handcuffs and Anderson again complained about the handcuffs being too tight. Video at 4:35–40. Ferguson again responded by demanding that Anderson stop moving. Video at 4:35–40.

---

[2] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

Ferguson then retraced Anderson's steps and recovered a black handgun and a magazine under the white SUV Anderson ran behind during the chase. Video at 5:46–6:30. Ferguson deduced that the firearm belonged to Anderson because it was dry despite the rain, suggesting it had recently been placed near the SUV. When asked whether he was hurt, Anderson reported that his face and head hurt. He was later examined by emergency medical services, who determined that Anderson did not need additional medical care. J.A. 98 ¶ 13, 114 ¶ 9; Video at 9:25–54. Further investigation revealed that the moped had been stolen. J.A. 98 ¶ 14.

## II.

Anderson sued Defendants Winston-Salem Police Department, Ferguson, Officer Lavally, Officer Boissey, and Police Chief Catrina Amelia Thompson, all in their individual and official capacities, for violations of his civil rights. J.A. 10–25. Anderson's pro se complaint raised claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments. J.A. 14. Defendants moved to dismiss the complaint, and the magistrate judge issued an order & recommendation ("O&R") recommending that the motion be granted in part and denied in part. The district court adopted the O&R and allowed Anderson's claims against Ferguson, Lavally, and Boissey in their individual capacities to proceed, dismissing the remainder of his claims.

Later, Boissey, Ferguson, and Lavally ("the Officers") filed a motion for summary judgment. The magistrate judge issued an O&R recommending that the Officers' motion be granted. The district court overruled Anderson's objections to the O&R, granted

7

summary judgment, and entered judgment for the Officers.  This appeal followed.[3]  We have jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1291.

III.

In granting summary judgment, the district court found that Ferguson did not use excessive force against Anderson.  On appeal, Anderson argues that this finding was in error and ignores qualified immunity.  Ferguson argues that using the mandibular pressure point technique did not constitute excessive force and that, in any event, it was not clearly established that using said technique was unconstitutional.  Anderson replies that Ferguson is not entitled to qualified immunity because it is clearly established that the use of force against restrained and compliant individuals is unconstitutional.[4]

---

[3] On appeal, we appointed Erica Hashimoto as pro bono counsel to represent Anderson.  After counsel withdrew from the representation, we appointed Scott Ballenger as amicus curiae to argue Anderson's position.  We are grateful to both counsel for their advocacy.

During oral argument, amicus counsel clarified that Anderson's appeal is limited to the district court's grant of summary judgment as to Ferguson.  Oral Argument at 19:14–30, *Anderson v. Ferguson*, No. 22-7199 (4th Cir. Dec. 12, 2024), https://www.ca4.uscourts.gov/OAarchive/mp3/22-7199-20241212.mp3 (hereinafter "Oral Argument").

[4] Ferguson argues that Anderson forfeited his arguments regarding the use of the mandibular angle pressure point technique by failing to raise the issue before the district court.  Anderson, however, made repeated references to Ferguson "sticking his fingernails behind Anderson's ear" or pressing his thumb and nails behind Anderson's ear throughout the record, which the magistrate judge acknowledged.  *See, e.g.,* J.A. 17, 44, 205–07, 214, 226.  Construed liberally, Anderson has sufficiently preserved his arguments related to the use of the technique, and we consider his arguments accordingly.  *See Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (Continued)

8

A.

We review a district court's grant of summary judgment de novo. *Caraway v. City of Pineville*, 111 F.4th 369, 378 (4th Cir. 2024). "Qualified immunity cases involve two steps": (1) a plaintiff pleads a § 1983 claim by alleging that an "official's conduct violated his right"; and (2) the official can "beat the plaintiff's claim by showing that the asserted right was less than 'clearly established' at the time of the conduct." *Wells v. Fuentes*, 126 F.4th 882, 889 (4th Cir. 2025) (first citing *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022); and then quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014)). Qualified immunity "shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Franklin v. City of Charlotte*, 64 F.4th 519, 530 (4th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

*Saucier v. Katz*, 533 U.S. 194 (2001), sets forth the qualified immunity analysis and requires courts to ask (1) "whether a constitutional violation occurred"; and (2) "whether the right violated was clearly established." *Franklin*, 64 F.4th at 530 (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)). This court may exercise its discretion in determining which of the two prongs to analyze first, or, "answering one in the negative,

---

("[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.' "); *see id.* (citing *Martin v. Duffy*, 858 F.3d 239, 245–46 (4th Cir. 2017)) (requiring district courts to liberally construe pro se objections to a magistrate's recommendation).

9

[it may] decline to answer the other." *Id.* (citing *Pearson*, 555 U.S. at 236); *see Wells*, 126 F.4th at 889. If we choose to consider whether an asserted right was clearly established first, "we assume that the plaintiff can carry his burden at step one" and "ask only whether what the officer allegedly did was undebatably wrong." *Wells*, 126 F.4th at 889–90.

For an asserted right to be clearly established, "its contours [must be] sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' " *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014)). This inquiry requires us to be able to " 'identify a case' or a 'body of relevant case law' where 'an officer acting under similar circumstances was held to have violated the Constitution.' " *Wells*, 126 F.4th at 890 (quoting *Rambert v. City of Greenville*, 107 F.4th 388, 402 (4th Cir. 2024)). "If no prior case has announced a 'rule' that 'obviously resolve[s]' the rights claim at hand, then the right was not clearly established." *Id.* (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)).

It is important to note that whether a right was clearly established is a question that "must be beyond debate from the perspective of *any* reasonable officer," and therefore requires an " 'objective' test." *Id.* at 889 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815–17 (1982)). This objective inquiry is "demanding" and requires us to ask "whether *every* reasonable officer would know *this* action in *this* situation was unlawful." *Id.* at 890 (first quoting *Wesby*, 583 U.S. at 63; and then quoting *Plumhoff*, 572 U.S. at 779). "If even one reasonable officer could think that 'existing precedent' did not put the legality of the conduct at issue 'beyond debate,' then all officers are immune." *Id.* (quoting *al-Kidd*, 563 U.S. at 741).

10

Our clearly established analysis first requires us to consider whether there are "cases of controlling authority in this jurisdiction," including decisions of the Supreme Court, this circuit, and the highest court of the state in which the case arose—here, North Carolina. *See Booker*, 855 F.3d at 538 (citing *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)) (cleaned up). If cases in our jurisdiction clearly establish the disputed right, then "we need not look any further than decisions from these courts." *Id.* (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)). If cases in our jurisdiction do *not* clearly establish the disputed right, we may look to "a consensus of cases of persuasive authority from other jurisdictions, if such exists." *See id.* at 538–39 (quoting *Owens*, 372 F.3d at 280) (emphasis omitted). Cases "must be factually similar so that the officer understands how the legal determination of excessive force 'will apply to the factual situation the officer confronts.' " *Omeish v. Kincaid*, 86 F.4th 546, 558–59 (4th Cir. 2023) (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12–13 (2021)).

B.

We start with the second step in the qualified immunity inquiry and ask whether the challenged conduct—the use of the mandibular angle pressure point technique on a restrained suspect—runs "afoul of clearly established law." *Wells*, 126 F.4th at 890. Finding that it does not, we hold that Ferguson is entitled to qualified immunity.

As a preliminary matter, few courts have addressed the mandibular angle pressure point technique's use. We therefore cannot "identify a case" with analogous circumstances and turn to a "body of relevant case law" instead. *See id.* (quoting *Rambert*, 107 F.4th at 402). The most relevant applicable body of caselaw concerns the use of force on a

11

restrained suspect. Relevant here, this court has found that the use of force against a cooperative individual who was handcuffed behind his back, lying face-down, and disarmed was unreasonable, as the individual posed little to no threat to the officer. *See, e.g.*, *Young v. Prince George's Cnty.*, 355 F.3d 751, 757 (4th Cir. 2004) (officer was not justified in striking a "fully cooperative" suspect in the back of the head with his forearm and kneeing the suspect in the back when the suspect was lying face-down on the ground, handcuffed behind his back, and disarmed); *Meyers v. Baltimore Cnty.*, 713 F.3d 723, 732–34 (4th Cir. 2013) (officer was justified in deploying his taser three times when the suspect was acting erratically, holding a baseball bat, and advancing towards the officers, but was no longer justified when the suspect "fell to the floor, [was] no longer actively resisting arrest, and did not pose a continuing threat to the officers' safety"); *Jones v. Buchanan*, 325 F.3d 520, 534 (4th Cir. 2003) ("[I]t was clearly established that a police officer was not entitled to use unnecessary, gratuitous, and disproportionate force against a handcuffed, secured citizen, who posed no threat to the officer or others and had neither committed, nor was suspected of committing any crime."); *Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (officer was not justified in pushing suspect's face into the pavement once she was pinned to the ground after resisting arrest).

Placing Anderson's arrest in the context of existing caselaw, Ferguson did not violate a clearly established right by using the mandibular angle pressure point technique while Anderson was on the ground. A distinguishing factor between Anderson's arrest and our precedent proves fatal to Anderson's claims. Ferguson responded to a call from a confidential informant about a man with a gun and approached Anderson pursuant to that

12

description.   Anderson ran and reached for his pockets several times before Ferguson tackled him, ignoring commands from officers to "stop running" and "stop reaching." Video at 00:34–00:54.

Notable here, even after being handcuffed, Anderson continued to move on the ground while the officers attempted to search him.   Although amicus counsel admitted during oral argument that Anderson was moving on the ground, amicus contended that this movement does not rise to the level of resistance required to justify Ferguson's use of force. Oral Argument at 22:47–24:15.   This contention ignores our obligation to consider the "reasonableness" of Ferguson's use of the technique "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).   Our "calculus of reasonableness," which we consider from "the peace of a judge's chambers," must account for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.   Again, in context, Anderson did not comply with several commands to stop moving, even once handcuffed, while the officers attempted to search his person for the reported weapon.   A "reasonable officer on the scene" may very well have perceived Anderson's continued movements to be resistant and uncooperative. *Id.* at 396.   We

13

therefore cannot say that Ferguson's use of the pressure point technique for nine seconds was unreasonable in these circumstances.[5]

Accordingly, Anderson is unable to claim a clearly established right, and so qualified immunity applies.

## IV.

We now turn to Anderson's procedural challenge. Anderson filed a letter with the district court, which the court construed as a motion to add defendants, indicating his desire to add three other officers as defendants: Wagoner, Phillips, and B. B. Sisk. J.A. 49. Anderson filed a second letter several weeks later, withdrawing his motion and stating that he "no longer wish[ed] to propose any new defendants in [his] case" and he "only wish[ed] to pursue defendant[s] B. Ferguson, Lavally, and Boissey." J.A. 50. Therein, Anderson explained that his "understanding is not the best" due to him being a "mental health patient" and asked the court to take this into consideration and "move [his] case forward[.]" J.A. 50.

---

[5] Relevant academic literature indicates that pressure techniques are widely taught across various law enforcement agencies. *See, e.g.*, John O'Neill et al., *Police Academy Training, Performance, and Learning*, Behav. Analysis Practice 353, 354 (2019) (pressure point control techniques taught across 85% of North American Police Academies). This context is important, as "[w]ithout fluency in their ability to employ nonlethal forms of force (e.g., pressure-point manipulation and disarming), officers might be more likely to rely on less lethal (e.g., chemical spray, conducted-energy device, or baton strikes) and lethal force (e.g., firearms)." *Id.* Further, given the widespread instruction on the value of this nonlethal technique, it is even less likely that a reasonable officer in the same circumstances would have believed their conduct to be unconstitutional.

Anderson filed a third letter three weeks later, which the court docketed as "Motion to Amend Complaint," again seeking to add an additional six defendants: Wagoner, Officer J.F. Bross, Sisk, Phillips, the District Three Street Crimes Unit, and the Fields Services Bureau Street Crimes Unit. J.A. 51–56. Anderson alleged additional excessive force claims against Wagoner and Phillips. J.A. 54–55.

In a text-only order, the magistrate judge denied Anderson's motion to amend complaint, citing four reasons. First, units of a police department are not "persons" under § 1983, rendering their addition as defendants futile. Second, Anderson failed to set forth any factual allegations against Bross, rendering his addition as a defendant futile. Third, Anderson failed to set forth any factual allegations against Sisk regarding excessive force and only alleges that Sisk should "face liability because he 'accompanied' the unit that used excessive force and 'showed no remorse,' " also rendering his addition as a defendant futile. Finally, Anderson previously withdrew his motion seeking to add Phillips and Wagoner and did not explain the reversal of this decision in his new motion. J.A. 5. As such, the magistrate judge determined that the court "c[ould not] find that 'justice [] require[d]' " their addition given that Anderson "previously ha[d] indicated that his desire to add them as Defendants resulted from his poor 'understanding' and status as a 'mental patient.' " *Id.* Further, "their addition as Defendants would delay the case from moving forward until service of process on them could occur (counter to Plaintiff's twice expressed wishes)." *Id*.

Anderson argues that the district court's refusal to add Wagoner and Phillips was in error.

15

A.

Denials of leave to amend are reviewed for abuse of discretion. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) (citing *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006)). "Although leave to amend should 'be freely given when justice so requires,' the district court may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (first quoting Fed. R. Civ. P. 15(a); and then quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).[6]

"An abuse of discretion is where the judge has acted in an arbitrary or irrational manner, where he has completely failed to consider the right factors, or where he relied on faulty legal or factual premises." *Nicholson*, 42 F.4th at 197 (citing *United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018)). It would be an abuse of discretion "for the district court to fail to identify which of the three permissible reasons to deny amendment it relied on or to fail to give any reasons at all—unless, of course, its reasons 'are apparent'—but

---

[6] We have said in other cases that there are only three scenarios where a district court can deny leave to amend: "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426 (quotation omitted). This shorter list is not in conflict with *Glaser*'s longer one. Undue delay is relevant to whether an amendment would be prejudicial, and repeated failure to cure deficiencies can be thought of as a form of bad faith. *See Nicholson*, 42 F.4th at 198 (delay makes prejudice easier to show, and "stubbornly refusing to follow rules" is a form of bad faith).

16

within those three categories, a judge only abuses his discretion when he steps outside the bounds of reasonable disagreement." *Id.* at 197–98 (first citing *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 194 (4th Cir. 2009); and then citing *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)).

## B.

Here, the district court's reasons for denying the motion to amend are apparent. Anderson had ample opportunity to amend his complaint and explicitly withdrew his motion to do so, stating that he "no longer wish[ed] to propose any new defendants in [his] case." J.A. 50.  Further, Anderson's final motion to amend was futile.  Therein, Anderson alleged that Phillips "allowed his team to brutally strike [his] body and hold [him] down as the D-3 Team [performed] sexual molestation tactics upon [him], while punching [him] in the back and in [his] side" and that Phillips "pull[ed] his pants down and [struck] him with brutal physical force." J.A. 54.  Anderson cited the bodycam footage in support of these allegations. *Id.*  Anderson also alleged that Wagoner "pull[ed his] pants down and [struck him] with brutal physical force," including by "jump[ing] up and down on [him] rapidly." J.A. 55.  These claims, in light of the bodycam footage, are futile. *See generally* Video. Accordingly, the district court did not abuse its discretion in denying the motion to amend.

## V.

17

For the reasons explained above, Ferguson is entitled to qualified immunity, and the district court did not err in granting summary judgment or denying Anderson's motion to amend.[7]  The judgment is therefore

*AFFIRMED.*

---

[7] Officer Ferguson's motion to dismiss (ECF No. 55), and Anderson's motion for stay pending appeal (ECF No. 68), motion for emergency relief (ECF No. 71), motion for relief (ECF No. 72), and motion for leave to file exhibits (ECF No. 88) are denied as moot.

18

TOBY HEYTENS, Circuit Judge, dissenting in part:

I would vacate the district court's judgment and remand for further proceedings.

Under this Court's precedent, a district court may deny leave to amend "*only* when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quotation marks removed) (emphasis added). The district court cited none of those reasons when it denied Anderson's request for leave to amend. Instead, the court said it was doing so for two reasons: because Anderson withdrew a previous request to add the same additional defendants and adding those defendants now "would delay the case from moving forward until service of process on them could occur." JA 5. Because neither justification falls within "the three permissible reasons" for denying leave to amend, *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022), I would hold the district court exceeded its discretion.

True, "a district court's failure to articulate its reasons for denying leave to amend does not amount to an abuse of discretion so long as its reasons are apparent." *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 194 (4th Cir. 2009) (alterations and quotation marks removed). But here, "the only reasons mentioned by the district court . . . did not justify denying [Anderson] leave to amend." *Id.* And because the officers had not yet responded to the complaint (much less produced discovery) when the district court ruled, the court could not have determined that the proposed amendments to the complaint were futile based on anything other than the complaint, including body camera footage that was not yet in the record. For that reason, I dissent.

19